FILED
United States Court of Appeals
Tenth Circuit

January 20, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

CYNTHIA LYNN YELEY-DAVIS,

  Defendant - Appellant.

No. 10-8000

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 1:09-CR-00224-CAB-1)**

Ronald Pretty, Attorney at Law, Cheyenne, Wyoming, for Defendant - Appellant.

Randall Carnahan, Special Asst. U.S. Attorney, (and Christopher A. Crofts, U.S. Attorney, on the brief), Casper, Wyoming, for Plaintiff - Appellee.

Before **TACHA**, **KELLY**, and **GORSUCH**, Circuit Judges.

**KELLY**, Circuit Judge.

  Defendant-Appellant Cynthia Yeley-Davis appeals from her conviction and

sentence of life imprisonment for conspiracy to possess with intent to distribute,

and to distribute, over 500 grams of a mixture or substance containing a

detectable amount of methamphetamine.  21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846.

On appeal, she argues that the trial court made several evidentiary errors and

imposed an improper sentence.  We have jurisdiction pursuant to 28 U.S.C.

§ 1291 and 18 U.S.C. § 3742(a), and we affirm.

<u>Background</u>

Ms. Yeley-Davis was charged on July 23, 2009 in an indictment which

named Roman Cortez-Nieto and Adan Torres-Leos as co-conspirators.  1 R. 19.

At trial, several witnesses testified about Ms. Yeley-Davis's involvement in the

alleged conspiracy.  Through the testimony of a state law enforcement agent

("agent"), the government introduced certified telephone toll records from Cellco

Partnership dba Verizon Wireless ("Verizon") containing information about phone

calls made and received by Ms. Yeley-Davis, Roman Cortez-Nieto, and Adan

Torres-Leos ("Exhibit 5").  3 R. 613-14.  The government also introduced six

charts created by the agent which summarized the data in the cell phone records.

<u>Id.</u> at 619-22, 631-32, 635.  The agent testified that he obtained the records from

Verizon and explained how cell phone towers operate.  In addition, the

government introduced a notebook and pictures of a cell phone which contained

evidence linking Ms. Yeley-Davis to the alleged conspiracy.  <u>Id.</u> at 605-09,

611-13.  Throughout the trial, the government used various photo arrays of the

alleged co-conspirators to assist the jury in associating faces with names.  Aplee

Br. at 46.

A jury convicted Ms. Yeley-Davis on September 11, 2009. 2 R. 15-16. At sentencing, the government sought a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)(A) based on Ms. Yeley-Davis's two prior state felony drug convictions and the jury's conclusion that the conspiracy involved over 500 grams of methamphetamine. 3 R. 870, 882. The court sentenced her to life imprisonment, with ten years supervised release, and imposed a fine of $1,000 and a $100 special assessment. Id. at 904-06. Ms. Yeley-Davis timely appealed. 1 R. 266.

On appeal, Ms. Yeley-Davis argues that the district court erred in admitting Exhibit 5, thereby depriving her of her Sixth Amendment right to confrontation. She also argues that the court erred in imposing a life sentence because one of her previous convictions does not constitute a felony drug offense and because a life sentence here violates her Eighth Amendment rights. Finally, she argues that the admission of the notebook and the pictures of the cell phone, the agent's expert testimony about how cell phone towers operate, and the photo arrays amounts to cumulative error warranting reversal.

Discussion

A.    Confrontation Clause.

Ms. Yeley-Davis contends that the admission of Exhibit 5 denied her a

right to confrontation under the Sixth Amendment. Aplt. Br. at 17-24. Exhibit 5 contains phone records of Ms. Yeley-Davis from August 15, 2008 to September 15, 2008, certified by the Verizon records custodian. 5 R.; see Fed. R. Evid. 902(11). The phone records provide information about each call made or received by Ms. Yeley-Davis's number, including the number making the call, the number receiving the call, and the date and duration of the call. 5 R. The certification—an affidavit submitted under Fed. R. Evid. 902(11) to authenticate the records—states that the record "[w]as made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; [w]as kept in the course of regularly conducted activity; and [w]as made by the regularly conducted activity as a regular practice." Id. In addition, Exhibit 5 contains the phone records of Roman Cortez-Nieto and Adan Torres-Leos from September 29, 2008 to October 24, 2008, also certified by the Verizon records custodian under Rule 902(11). Id. The agent testified that he obtained the phone records and affidavits directly from Verizon. 3 R. 614. The trial court admitted Exhibit 5 over Ms. Yeley-Davis's Confrontation Clause objection. Id. at 615. In addition, the agent testified that pursuant to the information found in the Exhibit 5, he created six charts ("Exhibits 5-A through 5-F") to summarize the phone calls between Ms. Yeley-Davis and various other alleged co-conspirators. The trial court admitted all six exhibits over Ms. Yeley-Davis's Confrontation Clause objections. Id. at 619,

622, 631, 635.

On appeal, Ms. Yeley-Davis argues that admitting the cell phone records and their authenticating documents violated her right to confrontation under the Sixth Amendment. She does not challenge the district court's admission of Exhibits 5-A through 5-F. "Although a district court's evidentiary rulings are reviewed for abuse of discretion, whether admission of . . . evidence violates the Confrontation Clause is reviewed de novo." United States v. Townley, 472 F.3d 1267, 1271 (10th Cir. 2007) (citation omitted).

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause "guarantees a defendant's right to confront those 'who bear testimony' against him." Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2531 (2009) (quoting Crawford, 541 U.S. at 51). "Under Crawford, out-of-court testimonial statements may be admitted against a defendant only if either the declarant of those statements testifies at trial or the declarant is now unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant." United States v. Pablo, --- F.3d ----, 2010 WL 4609188 (10th Cir. Nov. 16, 2010) (citing Crawford, 541 U.S. at 54). Because we conclude that neither the cell phone records nor their authenticating documents were testimonial, no Confrontation Clause violation occurred.

As an initial matter, we hold—although Ms. Yeley-Davis does not appear to argue this on appeal—that the cell phone records in Exhibit 5 qualify as business records under Fed. R. Evid. 803(6). Fed. R. Evid. 803(6) provides an exception to the hearsay rule for records "kept in the course of regularly conducted business activity . . . if it was the regular practice of that business activity to make the . . . record." Fed. R. Evid. 803(6). To satisfy the business records exception, the proposed document must "(1) have been prepared in the normal course of business; (2) have been made at or near the time of the events recorded; (3) be based on the personal knowledge of the entrant or of a person who had a business duty to transmit the information to the entrant; and (4) indicate the sources, methods and circumstances by which the record was made trustworthy." United States v. Ary, 518 F.3d 775, 786 (10th Cir. 2008) (citation omitted). "The proponent of the document must . . . lay this foundation for its admission." Id. (citing United States v. Samaniego, 187 F.3d 1222, 1224 (10th Cir.1999)).

The certification and affidavit signed by the Verizon records custodian establish that the phone records are business records. Even though the records are admissible under the business records exception to the hearsay rule, however, we must still determine whether the records are testimonial, and thus, subject to the Confrontation Clause. United States v. Pursley, 577 F.3d 1204, 1223 (10th Cir. 2009), cert. denied, --- U.S. **----**, 130 S. Ct. 1098 (2010) ("[E]ven if a statement qualifies for an exception to the hearsay doctrine—based upon judicially

fashioned reliability principles—the statement's admission may violate the Sixth Amendment's mandate for 'confrontation' if it constitutes 'testimonial' hearsay." (citing Crawford, 541 U.S at 61-62; Melendez Diaz, 129 S. Ct. at 2533)).

In Crawford, the Court suggested that business records are, by nature, not testimonial, and therefore not subject to the Confrontation Clause. See 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."); id. at 76 (Rehnquist, C.J., concurring) ("To its credit, the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records."). See also United States v. Mendez, 514 F.3d 1035, 1045 (10th Cir. 2008) ("Crawford suggests public records and business records fall outside the testimonial ambit of the Confrontation Clause." (citation omitted)). In Melendez-Diaz, the Court clarified that "[b]usiness . . . records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." 129 S. Ct. at 2539-40. To determine whether Exhibit 5 and its authenticating documents are subject to confrontation, then, we must decide whether they are testimonial.

We have held that "[a] testimonial statement is a statement that a reasonable person in the position of the declarant would objectively foresee might

be used in the investigation or prosecution of a crime." Pablo, 2010 WL 4609188 at *4 (citing Pursley, 577 F.3d at 1223). Under Melendez-Diaz, a relevant question in determining whether a business record is testimonial is whether the record was created for the administration of an entity's affairs or for the purpose of establishing or proving some fact at trial. 129 S. Ct. at 2539-40.

Ms. Yeley-Davis contends that the phone records and authenticating documents in Exhibit 5 are testimonial because they were prepared solely for use at trial to prove the conspiracy. Aplt. Br. at 18, 21. Specifically, she argues that the records were not telephone bills, but rather "exhibits prepared especially and only for trial." Aplt. Reply Br. at 7. Ms. Yeley-Davis is correct that the phone records in Exhibit 5 are not telephone bills. This does not mean, however, that these records were created simply for litigation—they were not. Rather, these records were kept for Verizon's business purposes. Indeed, both the certification authenticating Ms. Yeley Davis's phone records and the affidavit authenticating the phone records of the two alleged co-conspirators state that the records were kept in the course of Verizon's regularly conducted business.

We note that the Eleventh Circuit, in an unpublished opinion, has similarly held that cell phone records are not testimonial. See United States v. Green, No. 10-10300, 2010 WL 3401485, at *2 (11th Cir. Aug. 31, 2010) (unpublished) ("[B]ecause the [cell phone] records were generated for the administration of Metro PCS's business, and not for the purpose of proving a fact at a criminal trial,

- 8 -

they were non-testimonial, and the district court did not violate [defendant's] constitutional right [to confrontation] by admitting them into evidence."). Because the phone records here were "created for the administration of [Verizon's] affairs and not for the purpose of establishing or proving some fact at trial" we conclude that they were not testimonial and thus, not subject to confrontation. Melendez-Diaz, 129 S. Ct. at 2539-40.

Ms. Yeley-Davis also contends that the certification and affidavit signed by the Verizon record custodian are testimonial. Aplt. Reply Br. at 8. The government presented these documents to certify the records pursuant to Fed. R. Evid. 902(11), which "permits a party to establish the authenticity of documents as domestic business records through a declaration from the records' custodian." United States v. Lewis, 594 F.3d 1270, 1278 (10th Cir. 2010). In an unpublished opinion, we chose not to decide whether foundational documents such as these are testimonial. See United States v. Salinas-Valenciano, 220 Fed. App'x 879, 884-85 (10th Cir. Apr. 4, 2007) (unpublished). Arguably, these documents fit our broad definition of testimonial statements, as the Verizon records custodian objectively could have foreseen that the certification and affidavit might be used in the investigation or prosecution of a crime. But, as we explain below, we agree with other circuits who have held that certificates of authenticity presented under Rule 902(11) are not testimonial. See United States v. Ellis, 460 F.3d 920, 927 (7th Cir. 2006); see also United States v. Jackson, --- F.3d ----, 2010 WL

4400023, at \*4 n.6 (5th Cir. Nov. 8, 2010) (holding that "<u>Crawford</u> does not apply to the foundational evidence offered to authenticate business records in preliminary determinations of the records' admissibility" (citation omitted)); <u>United States v. Weiland</u>, 420 F.3d 1062, 1077 (9th Cir. 2005) (holding that "a routine certification by the custodian of a domestic public record . . . and a routine attestation to authority and signature . . . are not testimonial in nature" (citation omitted)).

In <u>Ellis</u>, the Seventh Circuit held that a 902(11) certification, signed by the custodian of records at a hospital and introduced to authenticate a business record, was not testimonial. 460 F.3d at 927. The court rejected the argument that a Rule 902(11) certification is testimonial because it is made in anticipation of litigation. <u>Id.</u> Rather, the court held that the certification was "nothing more than the custodian of records . . . attesting that the submitted documents are actually records kept in the ordinary course of business" and that the statements in the certification "merely establish the existence of the procedures necessary to create a business record." <u>Id.</u> The court concluded that "the written certification . . . is nontestimonial [because it is] too far removed from the 'principal evil at which the Confrontation Clause was directed' to be considered testimonial." <u>Id.</u> (quoting <u>Crawford</u>, 541 U.S. at 50). Because the purpose of the certifications here was merely to authenticate the cell phone records—and not to establish or prove some fact at trial—we agree with the Seventh Circuit that they are not

testimonial.

Ms. Yeley-Davis's argument that Ellis is not applicable because it pre-dates Melendez-Diaz is not persuasive. If anything, the Supreme Court's recent opinion supports the conclusion in Ellis. In Melendez-Diaz, the Supreme Court held that "affidavits reporting the results of forensic analysis which showed that material seized by the police and connected to the defendant was cocaine" constituted out-of-court testimonial statements subject to confrontation. See 129 S. Ct. at 2530. Writing for the majority, Justice Scalia expressly described the difference between an affidavit created to provide evidence against a defendant and an affidavit created to authenticate an admissible record: "A clerk could by affidavit authenticate or provide a copy of an otherwise admissible record, but could not do what the analysts did here: create a record for the sole purpose of providing evidence against a defendant." Id. at 2539. In addition, Justice Scalia rejected the dissent's concern that the majority's holding would disrupt the long-accepted practice of authenticating documents under Rule 902(11) and would call into question the holding in Ellis. See Melendez-Diaz, 129 S. Ct. at 2532 n.1 ("Contrary to the dissent's suggestion, . . . we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the . . . authenticity of the sample . . . must appear in person as part of the prosecution's case."); see also id. at 2547 (Kennedy, J., dissenting) (expressing concern about the implications for evidence admitted pursuant to Rule 902(11) and future of Ellis).

The Court's ruling in <u>Melendez-Diaz</u> does not change our holding that Rule 902(11) certifications of authenticity are not testimonial.

B.      <u>Sentencing Challenges</u>.

Ms. Yeley-Davis raises two arguments concerning her sentence.  First, she argues that her prior state court conviction for taking or passing a controlled substance into a jail does not qualify as a prior felony drug offense and thus, she is not eligible for a mandatory life sentence enhancement under 21 U.S.C. § 841(b)(1)(A).  Aplt. Br. at 24-28.  Second, she contends that the imposition of a life sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment.  <u>Id.</u> at 28-33.

1.      <u>Prior Felony Drug Offense</u>.

Prior to trial, the government filed an information pursuant to 21 U.S.C. § 851 notifying Ms. Yeley-Davis that the government intended to seek a mandatory life sentence enhancement pursuant to 21 U.S.C. § 841(b)(1)(A) based on Ms. Yeley-Davis's two prior state convictions.  1 R. 65-66.  To invoke the mandatory life sentence enhancement under section 841(b)(1)(A), the government must show that the defendant was convicted of two or more felony drug offenses.  21 U.S.C. § 841(b)(1)(A) ("If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding

- 12 -

sentence."). A "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of . . . a State . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). The information contained certified copies of two prior felonies in Wyoming—delivery of a controlled substance, Wyo. Stat. § 35-7-1031, and taking or passing a controlled substance into a jail, Wyo. Stat. § 6-5-208. 3 R. 873-75; see also 1 R. 65-80. The district court held that both offenses qualified as felony drug offenses under 21 U.S.C. § 802(44) and sentenced Ms. Yeley-Davis to life imprisonment. 3 R. 898, 904. On appeal, Ms. Yeley-Davis contends that her conviction under Section 6-5-208 does not constitute a felony drug offense because the statute addresses both legal and non-legal substances. Aplt. Reply Br. at 13. We review questions of statutory interpretation de novo. United States v. Huskey, 502 F.3d 1196, 1197 (10th Cir. 2007) (citation omitted).

Section 6-5-208 provides: "a person commits a felony punishable by imprisonment for not more than three (3) years, a fine of not more than three thousand dollars ($3,000.00), or both, if that person takes or passes any controlled substance or intoxicating liquor into a jail . . . ." Ms. Yeley-Davis's argument that Section 6-5-208 is not a felony drug offense because it addresses more than just drug crimes is not persuasive. See Huskey, 502 F.3d at 1198-99 (suggesting that a statute's language, which "applie[d] to all sorts of crimes, and not only

- 13 -

drug crimes, provides at most weak support for [the] argument" that the offense was not a drug felony offense). While Section 6-5-208 does prohibit taking or passing liquor into a jail—which would not be considered a felony drug offense—Ms. Yeley-Davis pleaded nolo contendere to bringing methamphetamine into a jail. 1 R. 68. Thus, her conviction under Section 6-5-208 clearly fits the definition of felony drug offense under 21 U.S.C. § 802(44)—it is punishable by more than one year imprisonment, and it prohibits conduct related to drugs, i.e., taking or passing a controlled substance into a jail. The court properly considered this conviction a felony drug offense.

    2.    <u>Eighth Amendment</u>.

In addition, Ms. Yeley-Davis argues that the imposition of a mandatory life sentence violates the Eighth Amendment. Aplt. Br. at 28-33. We review de novo whether a criminal sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. <u>United States v. Williams</u>, 576 F.3d 1149, 1165 (10th Cir. 2009) (citing <u>United States v. Angelos</u>, 433 F.3d 738, 750 (10th Cir. 2006)).

"The Eighth Amendment contains a narrow proportionality principle that applies to noncapital sentences." <u>Id.</u> "Under that principle, the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime." <u>Id.</u> In <u>United States v. Huskey</u>, we held, in light of the Supreme Court's decision in <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991), that a mandatory

life sentence pursuant to 21 U.S.C. § 841(b)(1)(A) did not violate the Eighth Amendment. 502 F.3d at 1200; see also United States v. Williams, 576 F.3d 1149, 1165 (10th Cir. 2009) (upholding mandatory life sentence under 21 U.S.C. § 841(b)(1)(A)). Following precedent, we must hold that Ms. Yeley-Davis's mandatory life sentence pursuant to 21 U.S.C. § 841 (b)(1)(A) does not violate the Eighth Amendment.

C.      Cumulative Error.

Finally, Ms. Yeley-Davis argues that the trial court erred in allowing the introduction of a notebook and pictures of a cell phone used to tie Ms. Yeley-Davis to the conspiracy, allowing the agent to testify about how cell phone towers operate, and allowing photo arrays to be introduced into evidence. Aplt. Br. at 33-40. Ms. Yeley-Davis contends that the cumulative effect of these errors warrants a new trial. "A cumulative error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Bowling, 619 F.3d 1175, 1188 (10th Cir. 2010) (quotation marks and citation omitted).

1.      Introduction of the Notebook and Cell Phone Pictures.

First, Ms. Yeley-Davis argues that the trial court erred in admitting a notebook ("Exhibit 35") and photographs of a cell phone ("Exhibit 36") that were used to link her to the alleged conspiracy. Aplt. Br. at 35-37. At trial, the agent

- 15 -

testified that Exhibit 35 was a notebook seized from Hugo Cortes-Nieto's (Roman Cortez-Nieto's brother) vehicle when Hugo Cortes-Nieto was arrested on October 27, 2008, and that the notebook contained Ms. Yeley-Davis's phone number. 3 R. 605-07, 609-10. Ms. Yeley-Davis objected to the introduction of Exhibit 35 on the ground that there was no chain of custody to show that the notebook was in the same condition as it was when it was seized and that there was no foundation laid as to who put the writing in the notebook. Id. at 607. The agent testified that another agent retrieved the notebook from the Mr. Cortes-Nieto's vehicle, that this other agent gave the notebook to him, and that he returned the notebook to the other agent after making a photocopy. Id. at 607-08. The agent stated that the notebook appeared to be in the same condition as when it was recovered. Id. at 608. The court was satisfied with the chain of custody and admitted Exhibit 35. Id. at 609.

In addition, the agent testified that Exhibit 36 consisted of three photographs he had taken of the contents of Roman Cortez-Nieto's cell phone, which had been sent to the agent after arresting agents seized it from Roman Cortez-Nieto on October 27, 2008. Id. at 611. The agent testified the photographs showed Ms. Yeley-Davis's number in both the "contacts" and "made phone calls" sections of the phone. Id. at 611-13. The court admitted Exhibit 36 over Ms. Yeley-Davis's chain of custody objection. Id. at 611. We review evidentiary rulings for abuse of discretion. United States v. Smith, 534 F.3d

1211, 1225 (10th Cir. 2008) (citation omitted).

"When 'evidence is unique, readily identifiable and relatively resistant to change, the foundation need only consist of testimony that the evidence is what its proponent claims.'" United States v. Johnson, 977 F.2d 1360, 1367 (10th Cir. 1992) (citing United States v. Cardenas, 864 F.2d 1528, 1531 (10th Cir. 1989). When, however, "the evidence is not readily identifiable and is susceptible to alteration by tampering or contamination, the trial court requires a more stringent foundation entailing a chain of custody of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with." Id. (quotation marks and citations omitted).

"[T]he chain of custody need not be perfect for the evidence to be admissible." Id. at 1367 (citing Cardenas, 864 F.2d at 1530). "Where the chain of custody is imperfect, deficiencies . . . go to the weight of the evidence, not its admissibility; once admitted, the jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence." Smith, 534 F.3d at 1225 (quotation marks and citation omitted). Thus, whether the government ultimately laid a sufficient foundation for the chain of custody of Exhibits 35 and 36 was a decision to be made by the jury. The trial court did not abuse its discretion in admitting Exhibits 35 and 36.

2.    Expert Testimony Concerning How Cell Phone Towers Operate.

Ms. Yeley-Davis also argues that the trial court erred in admitting the agent's testimony regarding how cell phone towers operate. Aplt. Br. at 37-38. When describing Exhibit 5-E—a chart he created displaying phone calls between Ms. Yeley-Davis's cell phone number and Roman Cortez-Nieto's cell phone number—the agent testified how cell phone towers operate to explain an apparent discrepancy on the chart. 3 R. 632-34. The chart purports to contain calls between Ms. Yeley-Davis and Mr. Cortez-Nieto, yet one of the calls listed in the chart shows a call from Ms. Yeley-Davis's phone number to a third phone number, which is different than Mr. Cortez-Nieto's number. The agent testified that this third number was, nevertheless, Mr. Cortez-Nieto's number, but that it had been changed because of the way cell phone towers operate. Specifically, he testified that

> when you're using your cell phone and you travel outside of your assigned area and you travel onto another tower that's some distance away from your assigned area where you signed up for your phone, it actually through that tower assigns a new phone number for switching purposes to get to your phone.

Id. at 633. He testified that he had learned this from prior cases, and explained that the numbers he put in the chart were the numbers that appeared on Mr. Cortez-Nieto's cell phone record that he obtained from Verizon. Id. at 633-34.

The district court admitted the testimony over Ms. Yeley-Davis's objection under Fed. R. Evid. 702 that the agent's testimony was expert testimony and that

- 18 -

a proper foundation had not been laid.  Id. at 633.  "'We review de novo the question of whether the district court applied the proper standard and actually performed its gatekeeper role [under Fed. R. Evid. 702] in the first instance.  We then review the trial court's actual application of the standard in deciding whether to admit or exclude an expert's testimony for abuse of discretion.'"  United States v. Roach, 582 F.3d 1192, 1206 (10th Cir. 2009) (quoting Dodge v. Cotter Corp., 328 F.3d 1212, 1223 (10th Cir. 2003)).

"When the subject matter of proffered testimony constitutes 'scientific, technical, or other specialized knowledge,' the witness must be qualified as an expert under Rule 702."  LifeWise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004) (citing Fed. R. Evid. 702).  "[A] person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person."  Id. (quotation marks and citation omitted); see also Fed. R. Evid. 701 (Adv. Comm. Notes (2000 Amend.)) ("[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." (quotation marks and citations omitted)).  The agent's testimony concerning how cell phone towers operate constituted expert testimony because it involved specialized knowledge not readily accessible to any ordinary person.

The government is correct when it argues that we have allowed police to testify as experts in the area of drug trafficking. See Roach, 582 F.3d at 1206-07 (collecting cases where police were permitted to testify as experts in drug trafficking cases). But before admitting expert testimony, the trial court must make certain findings to fulfill its gatekeeper role under Rule 702. Dodge, 328 F.3d at 1221. Specifically, the court "must first determine whether an expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, if the court determines that a witness is qualified, it must then determine whether her opinions are reliable." Milne v. USA Cycling Inc., 575 F.3d 1120, 1133 (10th Cir. 2009) (quotation marks and citation omitted). We have held that "when faced with a party's objection, a district court 'must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper.'" Dodge, 328 F.3d at 1223 (quoting Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000)). "Without specific findings or discussion on the record, it is impossible on appeal to determine whether the district court carefully and meticulously reviewed the proffered scientific evidence or simply made an off-the-cuff decision to admit the expert testimony." Id. (quotation marks and citations omitted). "In the absence of such findings, we must conclude that the court abused its discretion in admitting such testimony." Id. (quotation marks and citations omitted).

The district court did not make any findings on the record to support its

decision to admit the expert testimony; thus, it abused its discretion. Still, we will not reverse a conviction based on the erroneous admission of evidence if the error was harmless. See Roach, 582 F.3d at 1207. "An erroneous admission of evidence is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." United States v. Bornfield, 145 F.3d 1123, 1131 (10th Cir. 1998) (quotation marks and citation omitted). The error here was harmless. The agent compiled a list of 87 phone calls between Ms. Yeley-Davis and three alleged co-conspirators in Exhibits 5-A through 5-F. Of the 87 calls, there are only three instances where a phone number was supposedly changed by a cell phone tower. Admitting the testimony about how cell phones work did not have a substantial impact on the outcome of the case; therefore, the error was harmless and does not warrant reversal.

3.    Photo Array.

Finally, Ms. Yeley-Davis argues that the trial court erred in admitting photo arrays of the individuals alleged to be a part of the conspiracy ("Exhibits 6-A through 6-D"). Aplt. Br. at 40. The government argues that it used Exhibits 6-A through 6-D as an aid to assist the jury in placing faces with names throughout the trial. Aplee. Br. at 46. Ms. Yeley-Davis objected to the introduction of these exhibits, arguing that there was no foundation laid as to the interconnections of the individuals on the charts, that the exhibits were hearsay, and that the exhibits invaded the province of the jury. The government's witnesses identified

- 21 -

individuals in the charts, and the court admitted each exhibit. In addition, the court provided two limiting instructions to the jury explaining that the lines on the charts purporting to connect the alleged co-conspirators did not prove any elements of the crimes alleged. Id. at 131-32, 602-03. Ms Yeley-Davis also moved for mistrial based on the court's acceptance of these exhibits. Id. at 123, 448. On appeal, she again argues that the exhibits were hearsay and that they invaded the province of the jury. Aplt. Br. at 40. We review evidentiary rulings for abuse of discretion. Smith, 534 F.3d at 1225 (citation omitted).

Relying on our recent opinion in United States v. Allen, 603 F.3d 1202 (10th Cir. 2010), Ms. Yeley-Davis argues that the trial court erred in admitting these exhibits. Aplt. Br. at 38-40. In Allen, the defendant was convicted of conspiracy to possess methamphetamine with intent to distribute, conspiring to distribute methamphetamine, and use of a telephone to facilitate a drug felony. 603 F.3d at 1205. On appeal, the defendant argued that a photo array of the alleged conspirators, used by the government at trial as a demonstrative aid but never admitted into evidence, was hearsay and highly prejudicial. Id. at 1210. Defense counsel initially objected to admitting the chart into evidence, but agreed to allow it be used as a demonstrative aid. Id. at 1209. We noted that the trial judge was troubled by the photo array for several reasons: the word "sources" appeared at the top of the chart and the word "customers" appeared at the bottom, suggesting the flow of drugs; the chart was printed on paper with the scales of

justice in the background; and the photo of a co-defendant—in which he was pictured shirtless with visible tattoos, making him look like a gang member—looked like a mug shot. Id. at 1209-10. The trial judge instructed the jury that it was up to them to determine if the evidence supported the labels used on the chart. Id. at 1209.

Still bothered by the photo array, the judge later instructed the prosecution to remove the prejudicial features of the chart. Id. at 1210. The prosecution did not correct the problems; rather it removed the chart from the court and proceeded without it. Id. The trial judge gave the jury a second cautionary instruction about the chart. Id. We expressed our concern with the chart, but held, in light of the judge's limiting instructions and the fact that the chart was displayed for only two days of a two week trial, that any error was harmless. Id.

The photo array here is not nearly as prejudicial as the photo array in Allen, and it allowed the government to illustrate its theory. While there is a box labeled "customers" at the bottom of the chart—which arguably indicates the flow of drugs—the word "sources" does not appear on the chart, there is no image of the scales of justice, and there are no shirtless photos that look like mug shots. Given the limiting instructions—similar to the ones used in Allen—we hold that the trial court did not abuse its discretion in admitting the photo arrays.

In sum, Ms. Yeley-Davis's cumulative error argument fails because she has identified only one harmless error. See Moore v. Reynolds, 153 F.3d 1086, 1113

(10th Cir. 1998) ("Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors.").

AFFIRMED.