**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAVIER AMADOR-FLORES,

    Defendant - Appellant.

No. 17-2056
(D.C. No. 5:15-CR-02622-KG-5)
(D. New Mexico)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

After a jury trial, Javier Amador-Flores was convicted of conspiring to distribute methamphetamine and sentenced to 120 months' imprisonment. He now appeals, arguing for the first time that the district court should not have allowed one of the government's witnesses to offer expert opinion testimony about the drug-trafficking industry. Because Mr. Amador-Flores never made this argument to the trial judge, we review only for plain error. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

### A.    *Factual History*

On May 6, 2015, after a day's work in the oil fields, Mr. Amador-Flores returned home to find federal law enforcement agents scouring his property for evidence of drug trafficking. This perhaps was not totally unexpected, for two of Mr. Amador-Flores's close friends, with whom he communicated regularly, were drug traffickers. One of them was Jose Manuel Trujillo, a.k.a. "Paisa," whom Mr. Amador-Flores knew as "the main boss" of a drug-trafficking organization spanning from California to Texas, if not farther. R. Vol. III at 205. Two days prior, Paisa had offered Mr. Amador-Flores $2000 to deliver eight pounds of methamphetamine to a buyer in New Mexico. Mr. Amador-Flores says he declined Paisa's offer, as he always did when his friends tried to enlist him in their drug-trafficking schemes.

The deal went forward, but on this occasion Paisa's buyer turned out to be an undercover federal agent. And on May 6, while Mr. Amador-Flores was at work, federal agents executed a buy-bust sting at an abandoned bar outside Hobbs, New Mexico. They seized Paisa's methamphetamine and arrested three people in connection with the attempted sale.[1] One of the arrestees was Myrna Orozco, Mr. Amador-Flores's girlfriend. Ms. Orozco confessed that additional drugs might be found at the home she shared with Mr. Amador-Flores in Denver City, Texas, about thirty-five miles northeast of Hobbs. After she consented to a search, officers found methamphetamine and drug paraphernalia

---

[1] Paisa was not present and, so far as we know, he remains a fugitive.

stored in vehicles and sheds on their shared property. When Mr. Amador-Flores came home, agents told him they were conducting a narcotics investigation and asked whether he was involved. Mr. Amador-Flores denied any involvement.

After reviewing the evidence, the government concluded that Mr. Amador-Flores was in fact a willing participant in the drug-trafficking conspiracy.

## B.  *Procedural History*

On July 23, 2015, a grand jury returned a one-count indictment charging Paisa, Ms. Orozco, Mr. Amador-Flores, and two others with a single violation of conspiring to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and in violation of § 846.

Mr. Amador-Flores was tried alone. The government's first witness was Special Agent Rene Robles, the lead case agent for the investigation into Paisa's drug-trafficking organization. In relevant part, Agent Robles testified as follows:

> Q. Did you find it consistent—His statement about the May 4th call from Paisa, offering him, you know, $2,000 to, you know, do this deal in place of Joel Dominguez-Morales, did you find that to be consistent with what you typically see in these type of investigations for someone who never is involved in drug trafficking?
>
> A. No.
>
> Q. And could you explain why?
>
> A. Yes. You know, typically when a drug coordinator or a drug trafficker, when he's looking for, whether it be drivers or couriers, if he goes to them for that, it's more than likely because he's used them before, especially if dealt with on a regular basis.

3

R. Vol. III at 234. Mr. Amador-Flores did not object to the admission of this testimony.

Agent Robles also testified that Mr. Amador-Flores told him he had once wired money to Mexico on Paisa's behalf. That led to the following trial exchange:

> Q. Okay. Why was it significant to you that Mr. Amador-Flores admitted to wiring money for Paisa?
>
> A. Well, again, you know, in my experience in drug-trafficking organizations or criminal enterprises, it's not rare to see co-conspirators or suspects transfer money or deposit money, number one, to avoid immediate possession of the money on themselves if encountered by law enforcement; and, number two, to make it easier or faster to get money from one location to another.

*Id.* at 215. Mr. Amador-Flores did not object to the admission of this testimony either.

The jury returned a guilty verdict, and the district court sentenced Mr. Amador-Flores to 120 months' imprisonment. This direct appeal timely followed.

## II.   DISCUSSION

Mr. Amador-Flores argues that Agent Robles advanced opinion testimony admissible only if given by an expert witness. Agent Robles was not offered as an expert witness. Pointing to that disconnect, Mr. Amador-Flores asks us to remand so that he may have a new trial.

A district court's decision to admit expert or lay testimony is ordinarily reviewed for abuse of discretion. *United States v. Brooks*, 736 F.3d 921, 929 (10th Cir. 2013). That is only so, however, when the district court admitted testimony over a party's timely objection. Because Mr. Amador-Flores did not object at trial, the district court did not have an opportunity to consider the merits of his argument in the first instance. In other words, his argument was forfeited. Fortunately for Mr. Amador-Flores, the Federal Rules

4

of Criminal Procedure vest us with some discretion to consider forfeited arguments for the first time on appeal. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). But our discretion in these circumstances is "limited." *United States v. Olano*, 507 U.S. 725, 731 (1993). When a criminal defendant "did not make a contemporaneous objection to the admission of testimony, as was . . . the case here," we review a district court's decision to admit that testimony only for plain error. *Brooks*, 736 F.3d at 929–30. Mr. Amador-Flores asks us to implement plain error review here.

"To satisfy the plain error standard, a defendant must show that (1) the district court erred; (2) the error was plain; (3) the error affects the defendant's substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014). The parties dispute all four prongs. But we need not resolve all of their disagreements. That is because the criminal defendant "has the burden to prove that each of the four requirements is satisfied; failure on any one requires affirmance." *United States v. Beierle*, 810 F.3d 1193, 1200 (10th Cir. 2016). In this case, our analysis begins with the first prong and ends with the second. Because Mr. Amador-Flores has failed to demonstrate that any error was plain, we need go no further.

## A. *First Prong—Error*

"The first limitation on appellate authority under Rule 52(b) is that there indeed be an 'error.'" *Olano*, 507 U.S. at 732. "Deviation from a legal rule is 'error' unless the rule has been waived." *Id.* at 732–33. "Waiver is different from forfeiture. Whereas forfeiture

5

is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Id.* at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Mr. Amador-Flores's failure to object was forfeiture, not waiver; he did not intentionally relinquish or abandon his rights under the Federal Rules of Evidence. To whatever extent the district court deviated from those rules, it erred in doing so.

Mr. Amador-Flores claims that the district court erred in admitting certain testimony from Agent Robles in violation of Federal Rule of Evidence 701. In particular, he argues that Agent Robles's testimony "about what was typical in drug cases was expert testimony, as it relied on the agent's specialized knowledge. It could not come in through a witness, like Agent Robles, who was neither offered nor qualified as an expert." Appellant's Br. 24.

Rule 701 governs opinion testimony by lay witnesses. It provides that if a witness is not testifying as an expert—and Agent Robles was not—then "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on . . . specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. That means that if Agent Robles's testimony was within the scope of Rule 702, which governs expert testimony, it was necessarily inadmissible under Rule 701. *See* Fed. R. Evid. 701(c); *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011) ("[A] person may testify as a lay witness *only if* his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." (emphasis

6

added)); *see also James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011) ("[A] party simply may not use Rule 701 as an end-run around the reliability requirements of Rule 702. . . . Preventing such attempts is the very purpose of subsection (c)." (alterations in original) (quoting *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 227–28 (3d Cir. 2008))). To testify from "specialized knowledge," a witness first "*must* be qualified as an expert under Rule 702," which in turn requires a trial court to "make certain findings to fulfill its gatekeeper role." *Yeley-Davis*, 632 F.3d at 684 (emphasis added). The introduction of expert testimony generally also requires certain pretrial disclosures, *see* Fed. R. Crim. P. 16(a)(1)(G), which the government did not provide as to Agent Robles.

Our threshold question, then, is whether the testimony Mr. Amador-Flores challenges on appeal was based on specialized knowledge. To Mr. Amador-Flores, that's an easy yes, because Agent Robles compared what happened in this case to "what [i]s typical in drug investigations generally," Appellant's Brief 25, a comparison that could only be made by someone with specialized knowledge of drug investigations. *See Yeley-Davis*, 632 F.3d at 684 (explaining that the district court abused its discretion when it allowed a lay witness to testify about how cell phone towers operate).

The government concedes, as it must, that Agent Robles's testimony was "couched in terms of his experience," but it nevertheless characterizes his testimony as "a lay observation" that required "limited specialized knowledge, if any." Appellee's Br. 25. The government argues essentially that Agent Robles's testimony was so obvious that it was not a product of specialized knowledge and was thus admissible under Rule 701. *See*

7

*James River*, 658 F.3d at 1214 ("Rule 701 allows lay witnesses to offer observations that are common enough and require a limited amount of expertise, if any." (internal quotation marks and alterations omitted)). Mr. Amador-Flores principally focuses on the following exchange:

> Q. Did you find it consistent—His statement about the May 4th call from Paisa, offering him, you know, $2,000 to, you know, do this deal in place of Joel Dominguez-Morales, did you find that to be consistent with what you typically see in these type of investigations for someone who never is involved in drug trafficking?
>
> A. No.
>
> Q. And could you explain why?
>
> A. Yes. You know, typically when a drug coordinator or a drug trafficker, when he's looking for, whether it be drivers or couriers, if he goes to them for that, it's more than likely because he's used them before, especially if dealt with on a regular basis.

R. Vol. III at 234.

The government emphasizes the monetary value of the transaction, which was more than $100,000. In light of that fact, the government contends one need not be cop or criminal to understand that when the stakes are high, you trust the task to the veteran, not the novice. Mr. Amador-Flores in turn stresses that Agent Robles "expressly compared this case to other drug cases," something he could only do with specialized experience. Appellant's Reply Br. 5. From that assessment, Mr. Amador-Flores concludes the "comparisons were necessarily expert opinions." *Id.* That conclusion does not follow, however, unless Agent Robles was actually *applying* his specialized knowledge or experience in order to arrive at his given opinion. If he was not, then his comparison to

8

other cases is nothing more than an attempt to give gravitas to his unremarkable, non-expert observations.

The line between Rule 701 and Rule 702 is hazy, and Agent Robles's testimony is somewhere near it.[2] We need not and do not decide on which side of that blurred line his testimony belongs.

Mr. Amador-Flores also objects, again for the first time on appeal, to one other portion of Agent Robles's testimony:

> Q. Okay. Why was it significant to you that Mr. Amador-Flores admitted to wiring money for Paisa?
>
> A. Well, again, you know, in my experience in drug-trafficking organizations or criminal enterprises, it's not rare to see co-conspirators or suspects transfer money or deposit money, number one, to avoid immediate possession of the money on themselves if encountered by law enforcement; and, number two, to make it easier or faster to get money from one location to another.

R. Vol. III at 215.

Mr. Amador-Flores again argues that by invoking his "experience in drug-trafficking organizations or criminal enterprises," Agent Robles made "another comparison to other cases, which those who did not have experience with other drug cases could not make." Appellant's Br. 28–29. The government concedes that "observations about wiring money may be less common to the ordinary person than are observations about the level of familiarity a person would likely have with someone to

---

[2] For instance, had the district court admitted Agent Robles's testimony under Rule 701 over Mr. Amador-Flores's objection, it might have clarified for the jury that Agent Robles's opinion was not borne out of his expertise and should not be given undue weight.

whom they would entrust a $104,000 cash transaction." Appellee's Br. 35. But it would still have us hold that Agent Robles's observations are "common enough" to come within Rule 701.

Again, we need not and do not decide whether this testimony was erroneously admitted. Instead, we assume without deciding that the district court erred in admitting both excerpts of testimony. We consider next whether those errors were plain.

### B. *Second Prong—Plain Error*

"The second limitation on appellate authority under Rule 52(b) is that the error be 'plain.'" *Olano*, 507 U.S. at 734. "Error is 'plain' if it is obvious or clear, i.e., if it is contrary to well-settled law." *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (quotation omitted). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *Id.* (quotation omitted). "However, in certain circumstances, the weight of authority from other circuits may make an error plain even absent a holding from this court or the Supreme Court." *Id.* (internal quotation marks omitted).

Where, as here, a defendant challenges a non-constitutional evidentiary ruling normally reviewed only for abuse of discretion, the "plainness" prong is especially daunting. "For the admission of evidence to constitute plain error, the evidence must have been so obviously inadmissible and prejudicial that, despite defense counsel's failure to object, the district court, *sua sponte*, should have excluded the evidence." *Brooks*, 736 F.3d at 934 (quoting *United States v. Williams*, 527 F.3d 1235, 1247 (11th Cir. 2008)). In our view, Agent Robles's testimony was not "so obviously inadmissible and prejudicial

10

that" the trial judge must have intervened on his own initiative to put a stop to it. The testimony was not obviously inadmissible under Rule 701, *see supra*, Section II(A), and Mr. Amador-Flores concedes that it would have been admissible under Rule 702 had it been elicited from a designated expert. *See* Oral Arg. 12:24–12:28 ("If the government had wanted to introduce this as expert testimony, they easily could have."). Nor was the testimony obviously prejudicial. We have no cause to believe these excerpts of Agent Robles's lengthy testimony were particularly persuasive to the jury or even that the challenged testimony contributed to the jury's verdict at all. That neither Mr. Amador-Flores's counsel nor the trial judge commented on Agent Robles's testimony at any time in the district court proceedings is itself some indication that his testimony was not obviously prejudicial. We hold therefore that any presumed error was not plain.

### III.  CONCLUSION

Because we have concluded the district court did not plainly err, we decline to reach the third or fourth prong of the plain-error test.

The district court's judgment is AFFIRMED.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

11