**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 8, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 13-5138

TARRAN ARNEL BRINSON,

Defendant - Appellant.

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:13-CR-00004-GKF-1)**

Mark K. McCulloch, Brownstone, P.A., Winter Park, Florida (Robert L. Sirianni, Jr., Brownstone, P.A., Winter Park, Florida with him on the briefs), for Appellant.

Leena Alam, Assistant United States Attorney, Tulsa, Oklahoma (Danny C. Williams, Sr., United States Attorney, Tulsa, Oklahoma with her on the brief), for the Appellee.

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

**BACHARACH**, Circuit Judge.

Mr. Tarran Brinson was charged with various offenses involving trafficking in child prostitution. At trial, the prosecutor presented expert testimony on the operation of child prostitution rings, testimony by three men who had sex with a prostitute, and evidence consisting of electronic messages. Mr. Brinson was convicted and he appeals, requiring us to address six issues:

- **Qualification of Expert Witness:** Mr. Brinson argues the district court erroneously allowed expert testimony on child prostitution. Mr. Brinson asserts (1) the testimony would not have aided the jury's assessment, and (2) the testimony was unreliable because it was not based on the facts. We disagree. The expert discussed aspects of child prostitution rings unknown to many jurors. Thus, the court acted within its discretion in allowing the testimony.

- **Admission of Facebook and Text Messages:** Mr. Brinson argues the district court erroneously admitted certain text and Facebook messages. According to Mr. Brinson, the messages are inadmissible hearsay and their introduction into evidence violated his constitutional right to confrontation. The Facebook messages do not constitute hearsay because they consist of statements of a party opponent. Thus, introduction of the Facebook messages did not violate the Confrontation Clause of the Sixth Amendment. Mr. Brinson waived his arguments regarding the text messages by failing to identify the ones that had been erroneously admitted.

- **Statements of Unidentified Declarant:** Mr. Brinson argues the district court erroneously admitted hearsay statements by an unidentified declarant speaking to an officer. But the statements were not offered for their truth; rather, the statements were offered to show why the testifying officer had taken certain investigative steps. Thus, the district court did not err in allowing use of the statements.

- **Admission of Authentication Form:** Mr. Brinson argues the district court violated the right to confrontation by admitting a

2

"testimonial" document without allowing cross-examination of the person that had created that document. But the document was prepared to authenticate records, not to prove a fact at trial. Thus, introduction of the document did not violate Mr. Brinson's right to confrontation.

- **Admission of Evidence Obtained during Arrest:** Mr. Brinson argues the district court erroneously denied a motion to suppress evidence because officers lacked probable cause for an arrest. We conclude that police had probable cause to arrest Mr. Brinson; thus, the court did not err in allowing introduction of evidence obtained after the arrest.

- **Sufficiency of Evidence:** Mr. Brinson challenges the sufficiency of evidence of his guilt. But based on the trial evidence, the jury could reasonably have found Mr. Brinson guilty of each crime. Thus, we reject this challenge to the conviction.

In light of these conclusions, we affirm.

## I.    The Sting

In December 2012, a Tulsa police officer (Keith Osterdyk) was working undercover, posing as someone wanting to hire a prostitute from the "escort" section of a website called "Backpage.com."

Officer Osterdyk noticed an advertisement (titled "Sexy London – Let's Play 21") and called. After a brief exchange, the female on the other end stated the cost and arranged a meeting in Room 123 at a Super 8 Motel. Officer Osterdyk went to the room and was met by a girl. (We refer to the girl as "C.H.").

C.H. agreed to perform oral sex for a specific price. While Officer Osterdyk spoke, he noticed that the girl had an open cell phone on the bed.

3

To Officer Osterdyk, an experienced vice officer, the open cell phone meant that a third party was listening.

While Officer Osterdyk remained in the room, several "back-up" officers were monitoring Room 123 from unmarked vehicles in the motel parking lot. While monitoring the room, the officers noticed a black SUV moving slowly close to Room 123. The SUV had a "Jani-King" cleaning service logo on its side. The officers believed that the SUV driver might be working as security for the girl in the room.

Shortly after the black SUV appeared, C.H. picked up her phone and noticed that someone had texted her two warning messages:

1. "Don't do nothing. That's the police."

2. "People outside the room. Don't do nothing."

The messages had come from a contact listed as "Twin."

Officer Osterdyk saw an abrupt change in C.H.'s demeanor. At that point, the officer identified himself, arrested C.H., seized the cell phone, and read the two messages from "Twin."

After arresting C.H., authorities continued to investigate. One of the backup officers, Officer Zeller, visited the motel office and learned that Room 123 had been rented by Tarran Brinson. He was described as a young, skinny black male, with braids or dreadlocks, wearing a red shirt and a red Chicago Bulls hat.

The clerk also told Officer Zeller that Mr. Brinson

4

- had rented four other rooms at the motel during the previous week, and

- was a "regular" at the motel, always paying in cash.

The clerk gave Officer Zeller the registration records for Room 123 and the four other rooms. The registration records contained copies of Mr. Brinson's photo identification.

Finally, the clerk told Officer Zeller that Mr. Brinson usually drove a black SUV, pointing it out in the parking lot. The officers identified the SUV as the one they had seen.

## II.    The Arrest of Mr. Brinson

Roughly 45 minutes later, officers found Mr. Brinson in the parking lot of a nearby motel. Officers confronted Mr. Brinson, who confirmed that

- he had rented Room 123 that night,

- he owned the black SUV with the "Jani-King" logo, and

- he had driven his SUV through the parking lot that night.

With these admissions, officers arrested Mr. Brinson.

## III.   Trial and Conviction

The government charged Mr. Brinson with seven crimes:

1.    Conspiracy to Engage in Sex Trafficking,

2.    Sex Trafficking of Children,

3.    Attempted Sex Trafficking of Children,

5

4.  Use of a Facility in Interstate Commerce in Aid of Racketeering Enterprise,

5.  Coercion and Enticement,

6.  Obstruction of Justice, and

7.  Obstruction of Justice by Threat or Corruption.

After the government presented its case, Mr. Brinson moved for a judgment of acquittal on all charges. The court granted Mr. Brinson's motion on the count of Obstruction of Justice by Threat or Corruption, but denied the motion on the other six charges.

The jury found Mr. Brinson guilty of the remaining six charges, and the district court entered a judgment of conviction. This appeal followed.

## IV.  Expert Witness

At trial, the court considered Detective Derek Stigerts qualified to testify as an expert on prostitution. Mr. Brinson argues that this ruling constituted error for two reasons:

1.  The detective's testimony was limited to information that an average juror would already know; thus, the testimony would not have aided the jury.

2.  The testimony was unreliable because it was not based on the facts.[1]

---

[1]  Mr. Brinson also suggests that Detective Stigerts' testimony duplicated lay testimony. *See* Mr. Brinson's Opening Br. at 41. But Mr. Brinson does not explain how the testimony was duplicative. Because Mr. Brinson has not developed this argument, we deem it waived. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (holding that "arguments inadequately briefed in the opening brief are waived") (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998)).

6

We reject these arguments.

## A.    Standard of Review

We review the trial court's admission of expert testimony for abuse of discretion, and we will reverse only when the ruling is "manifestly erroneous." *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005).

## B.    Helpfulness to the Jury

The court acted within its discretion by deeming the detective qualified as an expert, and he testified based on his expertise about specialized concepts that could have helped the jury.  Thus, the district court did not abuse its discretion by allowing expert testimony by Detective Stigerts.

He discussed the prostitution trade, including

- the meaning of certain terms commonly used in the prostitution trade, such as "the game," "finesse pimp," "gorilla pimp," "escort," and "throw-aways,"

- the relationship between pimps and their prostitutes,

- how pimps and prostitutes use cellphones,

- how pimps and prostitutes use the internet, including websites such as Facebook.com and Backpage.com,

- how pimps recruit prostitutes, and

- how pimps control prostitutes.

IV Aplt. App. at 725-41.

7

The detective's explanation of terminology could have proven helpful. Throughout the trial, some of the witnesses used words common in the prostitution industry, such as "the game," "finesse pimp," and "throw-aways." To process this testimony, the jurors had to know what the words meant. The detective helped by defining these words for the jury. *See United States v. Solorio-Tafolla*, 324 F.3d 964, 966 (8th Cir. 2003).

Detective Stigerts also helped the jury by explaining how a pimp would have used the internet and cellphones to recruit and control prostitutes. *See United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001) ("By and large, the relationship between prostitutes and pimps is not the subject of common knowledge.").

Thus, we conclude that the district court acted within its discretion in concluding that the detective's testimony would have helped the jury.

C.    **Consideration of the Facts**

Detective Stigerts acknowledged that he was not familiar with the facts in the case. Based on this acknowledgment, Mr. Brinson contends that Detective Stigerts' testimony was not reliable.[2] The district court

---

[2]    In his reply brief, Mr. Brinson argues that the district court should have made specific findings on reliability. Mr. Brinson's Reply Br. at 3-4. This argument had not appeared in Mr. Brinson's opening brief. Thus, the argument was waived. *See United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir. 2004) ("The failure to raise an issue in an opening brief waives the issue.").

acted within its discretion in concluding that the testimony was reliable because it did not require a review of Mr. Brinson's case.

Rather than testify about case-specific facts, the detective testified about characteristics of the prostitution trade. That kind of testimony would not require review of case-specific facts. *See* Fed. R. Evid. 702, 2000 advisory committee notes (stating that "it might . . . be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case"). As a result, the district court did not abuse its discretion by allowing Detective Stigerts to testify as an expert regarding the prostitution trade.

## V.    Text and Facebook Messages

Mr. Brinson argues that the district court erroneously admitted messages from an account on Facebook.com and text messages from Mr. Brinson's cellphone. According to Mr. Brinson, these rulings violated the Federal Rules of Evidence and Mr. Brinson's Sixth Amendment right to confrontation.

We ordinarily review evidentiary rulings for abuse of discretion. *United States v. Blechman*, 657 F.3d 1052, 1063 (10th Cir. 2011). But we review the Sixth Amendment issue de novo. *United States v. Mendez*, 514 F.3d 1035, 1043 (10th Cir. 2008).

9

We hold that

- introduction of the Facebook messages did not constitute hearsay and their introduction did not violate the Sixth Amendment, and

- Mr. Brinson has waived his challenge to introduction of the "text messages" by failing to identify the disputed messages.

## A.    Facebook Messages

At trial, the prosecution offered Facebook messages written by "Twinchee Vanto."  The prosecution argued that "Twinchee Vanto" was a fake name used by Mr. Brinson.  Mr. Brinson challenges this argument, insisting that he did not write the Facebook messages.[3]  We reject this challenge and hold that the district court reasonably concluded that the prosecution had proven authorship by a preponderance of the evidence.

## 1.    Statements of a Party Opponent

A statement is not considered "hearsay" if it is offered against a party and is the party's own statement.  Fed. R. Evid. 801(d)(2)(A). Proponents of the evidence need only show by a preponderance of the evidence that the opposing party had made the statement.  *See United*

---

[3]    Mr. Brinson also asserts that the documents "do not meet the criteria for reliability and authentication."  *See* Mr. Brinson's Opening Br. at 46. But, Mr. Brinson does not sufficiently develop this argument.  Thus, we deem this argument waived.  *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (stating that "arguments inadequately briefed in the opening brief are waived") (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998)).

*States v. Lang*, 364 F.3d 1210, 1222 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1108 (2005).

To link Mr. Brinson to the messages, the government had to show by a preponderance of evidence that Mr. Brinson was "Twinchee Vanto." The prosecution sufficiently established that link through five facts:

1.     The "Twinchee Vanto" account was registered to an email address: "tarranb@yahoo.com."

2.     "Twinchee Vanto" identified himself in one message as "Tarran."

3.     A witness testified that "Twinchee Vanto" had identified himself as "Tarran."

4.     A phone number on the bill of sale for Mr. Brinson's SUV matched the number that "Twinchee Vanto" had given as a contact number.

5.     Two witnesses testified that "Twinchee Vanto" was Mr. Brinson's "Facebook name" and that Mr. Brinson was known as "Twin."

V-VI Aplt. App. at 979, 1073, 1121-31.

Mr. Brinson presented evidence that other individuals had access to the Facebook account and had posted messages. But the district court could reasonably find by a preponderance of the evidence that Mr. Brinson had authored the messages. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Therefore, the district court properly admitted the Facebook messages as statements of a party opponent.

## 2. Sixth Amendment Right of Confrontation

Because the messages did not constitute "hearsay," their introduction did not violate the Confrontation Clause of the Sixth Amendment. *Id.* at 182.

## B. Text Messages

Mr. Brinson also argues that the district court erroneously admitted text messages from Mr. Brinson's cellphone.

This argument has not been adequately developed. Mr. Brinson states in his headings and issue statements that the court "erred in admitting . . . text messages." *See* Mr. Brinson's Opening Br. at 2, 42. But Mr. Brinson has not identified the text messages erroneously admitted. Because Mr. Brinson has not adequately developed this argument, we deem it waived. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (holding that "arguments inadequately briefed in the opening brief are waived") (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998)).

## VI. Statements of an Unidentified Declarant

Mr. Brinson also argues that the district court erroneously allowed introduction of hearsay statements to Officer Keith Osterdyk during his undercover investigation.

At trial, Officer Osterdyk testified that during his investigation,

- he had responded to an online advertisement for an escort,

- an unidentified female had given him the price and told him to go to Room 123 at the Super 8 Motel, and

- he and the girl in the motel room had stated that they did not have a condom.

Mr. Brinson argues that the statements constituted inadmissible hearsay and that their introduction violated the right to confrontation.

We disagree for two reasons:

1. The statements did not constitute hearsay.

2. Even if the statements constituted hearsay, they would not have been considered "testimonial."

Thus, the district court did not err by admitting the statements into evidence.

## A. Hearsay

An out-of-court statement is considered "hearsay" if it is offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). Thus, if the statement is not offered for its truth, the statement is not considered "hearsay." *See United States v. Wicks*, 995 F.2d 964, 974-75 (10th Cir. 1993).

The statements to Officer Osterdyk did not constitute hearsay. The prosecution did not present the out-of-court statements to prove the truth of the statements about the location, price, or lack of a condom. Rather, the prosecution offered these statements to explain why Officer Osterdyk went to Room 123, how he knew the price, and why he agreed to pay for

13

oral sex.[4]  Because these statements were not offered for their truth, they did not constitute "hearsay."  *See United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987) (stating that an officer's discussion of an investigation "was not offered to prove the truth of the matter asserted; rather, it was admitted to explain preparations and steps in the Government's investigation").

## B.    Confrontation Clause

The Sixth Amendment's Confrontation Clause prohibits the admission of hearsay statements that are "testimonial" in nature.  *Crawford v. Washington*, 541 U.S. 36, 50-60 (2004).  As discussed above, the statements did not constitute "hearsay."  We also conclude that the statements were not "testimonial."

A statement is considered "testimonial" if "a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime."  *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005).

The resulting issue is whether the female on the telephone would reasonably have foreseen use of her statements in an investigation or prosecution.  The district court properly concluded that this use would not have been foreseen.  *See, e.g.*, *United States v. Mooneyham*, 473 F.3d 280,

---

[4]    Officer Osterdyk testified that he had "understood that not having a condom meant that [he] was not going to be able to have regular sex with [the female] but that [he] could only receive oral sex."  III. App. at 481.

14

286-87 (6th Cir. 2007) (statements made to an undercover officer were not "testimonial"); *Brown v. Epps*, 686 F.3d 281, 287-88 (5th Cir. 2012) (same).

Because the statements to Officer Osterdyk were not "hearsay" or "testimonial," the evidentiary ruling did not violate the Sixth Amendment's Confrontation Clause.

## VII. Authentication

Mr. Brinson also contends that the district court violated his right to confrontation by admitting into evidence a certificate authenticating debit card records. Because the certificate was not "testimonial," we hold that introduction of the certificate did not violate the Confrontation Clause.[5]

The prosecution presented the certificate in part to authenticate the debit card records under Federal Rule of Evidence 902(11).[6] This rule "permits a party to establish the authenticity of documents as domestic

---

[5] Mr. Brinson appears to confine his challenge to introduction of the certificate. In one sentence, however, he states that "the admission of the debit card records by use of a certificate alone was error." Mr. Brinson's Opening Br. at 54. From this sentence, we cannot tell whether Mr. Brinson is challenging introduction of the records on grounds separate from admissibility of the certificate. If Mr. Brinson is intending a separate challenge to use of the records, he has not presented any reason to exclude the records if the certificate is deemed admissible.

[6] The parties did not include a copy of the certificate in the appellate record. Thus, we must infer the contents of the certificate based on the existing record.

15

business records through a declaration from the records' custodian." *United States v. Lewis*, 594 F.3d 1270, 1278 (10th Cir. 2010).

We held in *United States v. Yeley-Davis* that this type of authenticating document is not "testimonial." 632 F.3d 673, 680 (10th Cir. 2011). In *Yeley-Davis*, we held that a document authenticating telephone records under Rule 902(11) is not "testimonial." *Id.* Though the document was prepared for trial, we reasoned that the purpose "was merely to authenticate the cell phone records—and not to establish or prove some fact at trial." *Id.*

*Yeley-Davis* is dispositive. The only difference is the nature of the records. Here, the records involve debit cards rather than a cellphone. But what matters is the nature of the certificate rather than the records. Thus, under *Yeley-Davis*, the evidentiary ruling did not violate the right to confrontation.

Mr. Brinson relies on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). There, the Supreme Court held that affidavits showing the results of a forensic analysis are testimonial statements. *Melendez-Diaz*, 557 U.S. at 310-11.

*Melendez-Diaz* does not apply. Our certificate does not contain any "analysis" that would constitute out-of-court testimony. Without that analysis, the certificate is simply a non-testimonial statement of authenticity. *See Yeley-Davis*, 632 F.3d at 681 ("The Court's ruling in

16

*Melendez-Diaz* does not change our holding that Rule 902(11) certifications of authenticity are not testimonial.").

## VIII. Evidence Obtained After the Arrest

The prosecution's case included not only Facebook messages, text messages, and undercover testimony, but also evidence found after Mr. Brinson's arrest.  Mr. Brinson moved to suppress that evidence, but the court denied the motion.  We uphold the ruling.

According to Mr. Brinson, police lacked probable cause for an arrest, so any evidence obtained afterward should have been suppressed.  The prosecution counters that Mr. Brinson waived this argument by failing to raise it before trial.

Mr. Brinson has not waived this argument.  But because probable cause existed, the district court did not err by denying the suppression motion.

### A.    Waiver

We first address whether this argument was waived.  The prosecution asserts that Mr. Brinson cannot raise the "probable cause" argument on appeal because he did not present it before trial.

Mr. Brinson raised the suppression motion after the trial was underway.  IV Aplt. App. at 518.  But the district court allowed Mr. Brinson to argue his motion to suppress at trial, and the government withdrew its initial objection to the court's consideration of the motion:

17

| Government: | Your Honor . . . defense counsel could have filed [the motion to suppress] prior [to trial] if he wanted to object to the seizure of this evidence. |
|---|---|
| . . . . | |
| Court: | Of course, the fact that he didn't raise it before [trial] doesn't preclude him from raising it now. |
| Government: | Surely not. |
| Court: | Anything further? |
| Government: | Not on this matter, Your Honor. |

IV Aplt. App. at 518-19.

Even if Mr. Brinson had waived his suppression claim before trial, the district court considered it. In these circumstances, we will address the merits of Mr. Brinson's argument. *See United States v. Jones*, 530 F.3d 1292, 1298 (10th Cir. 2008) (reviewing a misjoinder claim on appeal even though the defendant failed to raise the issue before trial).

## B.    Probable Cause

We conclude that probable cause existed for an arrest; thus, the district court did not erroneously deny the motion to suppress.

### 1.    Standard of Review

Probable cause to arrest exists "when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of

18

reasonable caution [to believe] that an offense has been or is being committed." *United States v. Zamudio-Carrillo*, 499 F.3d 1206, 1209 (10th Cir. 2007).

When reviewing for probable cause, we accept the trial court's factual findings unless they are clearly erroneous. *United States v. Baker*, 30 F.3d 1278, 1280 (10th Cir. 1994). In deciding whether the findings were clearly erroneous, we consider the evidence in the light most favorable to the prosecution. *Id.*

## 2. Basis for Probable Cause

Mr. Brinson was arrested based on his connection with C.H.'s prostitution activity. We must ask: Did arresting officers have a sufficient basis on which to arrest Mr. Brinson for his involvement with C.H.'s prostitution?

Based on the record, we conclude that probable cause existed. When Mr. Brinson was arrested, arresting officers knew five facts:

1.   While C.H. was in Room 123 with Officer Osterdyk, someone was warning her via text message: "Don't do nothing. That's the police."

2.   While providing back-up to Officer Osterdyk, officers observed a black SUV, bearing a "Jani-King" logo on its side, moving slowly near Room 123.

3.   Room 123 was rented that evening by Tarran Brinson.

4.   When officers saw Mr. Brinson, he matched the motel clerk's description of the person who had rented Room 123 and the

19

photo identification of "Tarran Brinson" included in the registration form for that room.

5. Mr. Brinson admitted that he had rented Room 123 that evening, drove a black SUV with a "Jani-King" logo on its side, and had driven the SUV past Room 123 that evening.[7]

IV Aplt. App. at 503-505, 512, 657-59.

Based on this evidence, authorities had probable cause to believe Mr. Brinson had directed C.H.'s prostitution. Thus, the district court did not err in denying Mr. Brinson's motion to suppress.

## IX. Sufficiency of Evidence

Mr. Brinson was convicted of Sex Trafficking of Children, Conspiracy to Engage in Sex Trafficking, Attempted Sex Trafficking of Children, Coercion and Enticement, Use of Facility in Interstate Commerce in Aid of Racketeering Enterprise. In deciding whether the district court should have granted the motion for judgment of acquittal, we engage in de novo review. *United States v. Ailsworth*, 138 F.3d 843, 846 (10th Cir. 1998). For this review, we ask: Could a reasonable jury have found Mr. Brinson guilty beyond a reasonable doubt for each of these crimes? *See United States v. Jones*, 768 F.3d 1096, 1102 (10th Cir. 2014). We

---

[7] The record is ambiguous regarding whether Mr. Brinson made these admissions prior to, or during, the arrest. *See* IV Aplt. App. at 661-62. The district court made no factual findings on this issue. On appeal, we resolve this ambiguity by considering the evidence in the light most favorable to the government. *United States v. Baker*, 30 F.3d 1278, 1280 (10th Cir. 1994). So, for purposes of this appeal, we conclude that Mr. Brinson made the admissions prior to the arrest.

20

conclude a finding of guilt was permissible under the evidence. Thus, the district court properly denied the motion for judgment of acquittal on the six crimes.

### A. Sex Trafficking of Children

The jury found Mr. Brinson guilty of Sex Trafficking of Children under 18 U.S.C. § 1591(a) (2012). To prove guilt, the prosecution had to show that Mr. Brinson

- by means affecting interstate commerce

- knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained C.H. or another person, or benefited in a venture which involved C.H. or the other person, and

- knew or recklessly disregarded the fact that C.H. or the other person was younger than 18, and

- knew or recklessly disregarded the fact that C.H. or the other under-age person would engage in a commercial sex act.

18 U.S.C. § 1591(a) (2012). Based on the evidence, the jury could reasonably have found Mr. Brinson guilty of this offense.

### 1. Acts of Sex Trafficking

The prosecution supplied evidence that Mr. Brinson had engaged in sex trafficking. This evidence included testimony that Mr. Brinson

- had rented Room 123 and owned the black SUV that was moving slowly by the room,[8]

---

[8] IV Aplt. App. at 512-20.

- had been paid by another man who had sex with C.H.,[9]
- had driven a black SUV with a "cleaning logo" on the side,[10] and

- had driven C.H. in a black SUV before and after she had engaged in an act of prostitution.[11]

Based on this evidence, the jury could reasonably find that Mr. Brinson engaged in sex trafficking.

## 2. Interstate Commerce

The evidence also indicated that Mr. Brinson had utilized facilities of interstate commerce, such as the internet and cellular phones, to engage in sex trafficking.[12]

This evidence included Mr. Brinson's

- establishment of C.H.'s escort advertisements on Backpage.com,

- use of cellphones to direct C.H.'s prostitution, and

- use of text messages to warn C.H. about the presence of police.

Based on this evidence, the jury could reasonably conclude that Mr. Brinson used interstate commerce to engage in sex trafficking.

---

[9]     V Aplt. App. at 918-20.

[10]    V Aplt. App. at 922.

[11]    V Aplt. App. at 917.

[12]    Mr. Brinson does not contest that the internet or cellular phones are facilities of interstate commerce.

22

### 3. C.H.'s Minority Status

The prosecution also presented evidence that Mr. Brinson had known or recklessly disregarded the fact that C.H. was underage.

Officer Osterdyk testified that

- C.H. appeared "much younger" than 21,

- police had found C.H.'s high school registration form in Mr. Brinson's SUV, and

- the registration form stated that C.H. had been born in 1997 (making her 14 years old when she was arrested).

IV Aplt. App. at 505, 536. Based on this evidence, the jury could reasonably find that Mr. Brinson knew or recklessly disregarded the fact that C.H. was a minor.

### 4. Summary

We conclude that the evidence was sufficient to support the conviction for Sex Trafficking of Children.

### B. Conspiracy to Engage in Sex Trafficking

Based on the trial evidence, a jury could also reasonably find a conspiracy to commit the crime of sex trafficking.

At trial, the prosecution presented evidence that Mr. Brinson had partnered with another person (K.S.) to establish a prostitution business. K.S. testified that she

- had recruited C.H. as an "escort" for Mr. Brinson, and

23

- had often communicated with Mr. Brinson about finding suitable "escorts" for the business.

V Aplt. App. at 985-95. Based on this evidence, the jury could reasonably find that Mr. Brinson conspired with K.S. to engage in sex trafficking.

### C. Attempted Sex Trafficking of Children

The jury also found Mr. Brinson guilty of Attempted Sex Trafficking of Children under 18 U.S.C. § 1594(a). This finding was also supported by the evidence.

For this offense, a person must "attempt" to commit the crime of sex trafficking. 18 U.S.C. § 1594(a) (2012). Thus, the prosecution had to prove that Mr. Brinson

- intended to commit the substantive offense, and

- took a "substantial step" toward the commission of that offense.

*United States v. Sullivan*, 919 F.2d 1403, 1429 (10th Cir. 1990).

The prosecution presented an exchange on Facebook.com between A.H. (a minor) and "Twinchee Vanto," whom the government argued was actually Mr. Brinson. A.H. had reached out to "Vanto" to ask how he was treating C.H.:

A.H.: Better make sure you look out for my lil sis yah feel me? >.> lol

. . . .

Vanto: [L]et me knw whn u wanna join the campaign cause we winning over here lol.

24

. . . .

Vanto:        Lol I'm forill.

A.H.:         I feeel you. lol, but im not gonna lie i aint never done nothing like that.  So im kinda nervous.

Vanto:        hell yea but ain't nothing to this sh-- simple it's like taking candy Frm a baby

A.H.:         damn, im just not trynaa f--- with no old a-- nasty a-- dudes you feell me?  like they gonn want some sh-- . . . .

Vanto:        You dnt have to f--- and the ones that wanna f--- gone pay 1000

A.H.:         alright, well sh--. i guess im down.

Aplee's App., Exh. 35-1.  A.H. testified that through this exchange, she believed "Vanto" was trying to lure her into the sex trade.  VI Aplt. App. at 1075-76.

Based on this evidence, the jury could reasonably find that Mr. Brinson took a substantial step toward the recruitment of A.H. into the prostitution trade.  As a result, the jury could reasonably have found Mr. Brinson guilty of attempted sex trafficking.

### D.    Coercion and Enticement

The jury also found Mr. Brinson guilty of Coercion and Enticement under 18 U.S.C. § 2422(b).  This finding was supported by the evidence.

Section 2422(b) makes it illegal to

- use any facility or means of interstate commerce

- to knowingly persuade, induce, entice, or coerce any individual

25

- who is younger than 18

- to engage in prostitution or any other criminal sexual activity.

18 U.S.C. § 2422(b) (2012).

Based on the trial evidence, the jury could reasonably have found Mr. Brinson guilty of this offense. For example, the jury could have relied on the Facebook.com exchange between "Twinchee Vanto" (Mr. Brinson) and A.H. From that exchange, the jury could reasonably infer that Mr. Brinson was using the internet to knowingly entice A.H. (a minor) into the prostitution trade.

### E. Use of a Facility in Interstate Commerce in Aid of Racketeering Enterprise

The jury also found Mr. Brinson guilty of Use of a Facility in Interstate Commerce in Aid of Racketeering Enterprise under 18 U.S.C. § 1952(a)(3) (2012). This finding was supported by the evidence.

Section 1952(a)(3) makes it illegal to use any facility in interstate commerce with the intent to "promote, manage, establish, carry on, or facilitate . . . unlawful activity." 18 U.S.C. § 1952(a) (2012). The phrase "unlawful activity" includes "any business enterprise involving . . . prostitution offenses." *See* 18 U.S.C. § 1952(b)(1) (2012).

Based on the evidence, the jury could reasonably find Mr. Brinson guilty of this offense. As discussed above, the evidence indicated that Mr.

26

Brinson had used the internet and cellular phones as part of his prostitution business.

## F. Obstruction of Justice

The jury also found that Mr. Brinson had committed the crime of Obstruction of Justice under 18 U.S.C. § 1591(d) (2012). For this finding, the evidence was sufficient.

Section 1591(d) prohibits a person from obstructing, attempting to obstruct, or in any way interfering with or preventing the enforcement of § 1591. Based on the trial evidence, the jury could reasonably have found Mr. Brinson guilty.

The prosecution presented evidence that Mr. Brinson had tried to prevent a subpoenaed witness (Lovely Richardson) from testifying before a federal grand jury. For instance, Ms. Richardson testified that Mr. Brinson had called her from jail and encouraged her to ignore a subpoena. IV Aplt. App. at 579-82. During her testimony, Ms. Richardson read from a transcript of that telephone call:

Richardson:     So . . . You think I should go?

Brinson:     No. For What?

. . . .

Richardson:     I don't know. I might not. I know something. It's – it's cool but I might go.

Brinson:     No. I'm telling you no. You want me to say no?

Richardson:        (laughter)

Brinson:        I can't get more clear than that.  No, or what?

Richardson:        Okay.  Damn.  Okay.

VI Aplt. App. at 1061-62.

Based on this exchange and Ms. Richardson's testimony, the jury could reasonably infer that Mr. Brinson was trying to prevent Ms. Richardson from testifying before the grand jury.  Thus, the jury could reasonably have found Mr. Brinson guilty of obstructing justice.

## X.    Conclusion

The district court did not commit error in the rulings on evidentiary issues, in denial of the motion for judgment of acquittal, or in application of the Sixth Amendment's Confrontation Clause.  Thus, we affirm.

28