**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4333

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MARVARLUS CORTEL SNEAD,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Dever III, District Judge.  (7:19-cr-00151-D-1)

Submitted:  October 5, 2022                      Decided:  December 28, 2022

Before NIEMEYER and HARRIS, Circuit Judges, and MOTZ, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Paul A. Tharp, ARNOLD & SMITH, PLLC, Charlotte, North Carolina, for Appellant.  Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, William A. Glaser, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael F. Easley, Jr., United States Attorney, Bryan Stephany, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury found Marvarlus Snead guilty of engaging a minor in the production of a visual depiction of sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) and (e) (Count I); trafficking a minor in prostitution, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2) (Count III); and using a facility in interstate commerce to carry on an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3) and (2) (Count IV).[1]  The district court ordered a new trial on Count I after concluding that its jury instructions on that count were erroneous under the intervening opinion in *United States v. McCauley*, 983 F.3d 690 (4th Cir. 2020), but the court entered judgment in accordance with the jury verdict as to the other two counts and sentenced Snead to serve 420 months in prison and to pay $202,743.35 in restitution.  Snead appeals, challenging his convictions and sentence.  For the following reasons, we affirm.

I.

In December 2017, Snead decided to become a pimp.  He spoke with Ashanti McLean, who had previously worked as a prostitute, and learned about advertising, pricing, and terminology used in the sex-industry.  Snead then met and recruited a 25-year-old woman, C.T., to work for him as a prostitute.  In social media messages he told her she could make "thousands of dollars in a night" and that his friend would place ads for her on the website Backpage.com.  Snead and McLean set up advertisements for C.T. online and coached her on how to act with "customers."  Snead also provided C.T. with the drug

---

[1] Count II of the indictment was dismissed by the Government before trial.

2

MDMA, also known as "Molly," to allow her to engage in commercial sex acts for days at a time without getting tired or feeling pain. Snead set the prices for C.T.'s services and kept half of her earnings.

Snead next recruited 17-year-old Jane Doe to engage in commercial sex. Doe had lived in and out of foster care since age eight and had no stable housing. Snead had known Doe since early in her childhood. Doe experienced domestic abuse in the late summer of 2017, and Snead claims that he "rescued" her from that abuse. In January 2018, Snead reached out to Doe through the social media platform Facebook, promising Doe that "[w]e can get this money together. I can help you get on your feet." In a phone call on January 12, 2018, Snead told Doe he had a family business that would "help [her] get on [her] feet," and asked her age and birthdate. Doe told Snead she was 17 years old and gave her correct date of birth. After the phone call, Snead asked Doe to send him "sexy" pictures.

Snead instructed McLean to pick up Doe and advertise pictures of Doe on Backpage.com. Snead then traveled to Wilmington, North Carolina, with C.T. and Doe. Snead told Doe that men were coming to see her, who would pay her to spend time with her but not touch her. When the men arrived, however, they had sex with Doe while C.T. waited in the living area of the hotel room. Snead later took C.T. and Doe to Jacksonville, North Carolina and rented rooms for them to service more clients there. Snead stayed in the city from January 14 to January 21, accompanying Doe as she engaged in commercial sex. During this period, Snead texted Doe "[w]e need another female but she has to be at least 18. Your birthday can't get here fast enough."

Snead kept the first $300 of Doe's earnings, and half of the remainder. Doe also paid for the hotel rooms, clothes, shoes, jewelry, and nails that Snead picked for her. Snead drugged Doe with Molly twice while she was sleeping without her knowledge or consent.

On January 24, 2018, authorities arrested Snead during a prostitution sting operation. That morning, Snead and Doe had taken "photographs and videos of themselves naked and having sexual intercourse," which became the basis for the charges on Count I. Br. of the United States at 12. A detective with the New Hanover County Sheriff's Office responded to an advertisement for Doe on Backpage.com and set up a "date." Upon arrival, deputies detained Snead and took Doe to the station for questioning. In an interview with the detectives, Doe stated that Snead thought she was 19 years old.

Doe returned to living with family members, but she had no running water and little stability. Consequently, Snead's mother and sister started feeding Doe, letting her wash her clothes, and driving her places. A few days after her 18th birthday, Doe, encouraged by Snead's family, signed an affidavit exonerating him. She testified that she signed the affidavit, written by Snead's mother, because she felt "obligated" and "loyal" due to his family's help. A year later, she signed another affidavit exonerating Snead, also written by his mother.

At trial, the jury found Snead guilty on all three counts. The district court ordered a new trial on the child pornography count but denied Snead's motion for judgment of acquittal on that count and entered judgment in accordance with the jury verdict on the remaining two charges, Counts III and IV.

4

II.

Snead levels several challenges to his conviction.

A.

Snead first contends that the district court should have entered a judgment of acquittal on Counts III and IV. Because Snead did not move for acquittal as to Counts III and IV before the district court, we consider only whether a manifest miscarriage of justice has occurred. *United States v. Lam*, 677 F.3d 190, 200 n.10 (4th Cir. 2012).

To sustain Snead's conviction on Count III, there must be substantial evidence that he "(1) knowingly recruited, transported, harbored, maintained, obtained, or enticed a person; (2) in or affecting interstate commerce; (3) knowing or in reckless disregard of the fact that the victim had not attained the age of eighteen years and would be made to engage in a commercial sex act." *United States v. Jennings*, 860 F. App'x 287, 289 (4th Cir. 2021).

A conviction under 18 U.S.C. § 1952(a)(3), the basis for Count IV, requires proof that the defendant "(1) travel[ed] in interstate or foreign commerce or use[d] an interstate or foreign facility, such as the mail; (2) intend[ed] thereby to promote an unlawful activity; and (3) subsequently promote[d] or attempt[ed] to promote that unlawful activity." *United States v. Monu*, 782 F.2d 1209, 1211 (4th Cir. 1986). The internet is a facility of interstate commerce, *see United States v. Phea*, 755 F.3d 255, 266 (5th Cir. 2014), and Snead recognizes that "the term 'unlawful activity' includes prostitution offenses in violation of the laws of the State in which they are committed or of the United States." Br. of the Appellant at 24.

5

Substantial evidence supports both convictions. Snead used Facebook, Backpage.com, and other websites to facilitate his trafficking of Doe. He also coached Doe on how to act, set the prices for her services, and took the majority of her earnings. Doe testified that Snead facilitated her engagement in commercial sex acts twice in Wilmington and once in Jacksonville; Snead's other associate, C.T., corroborated this testimony.

As for Doe's age, she testified under oath that she told Snead in January 2018 that she was only 17 years old. Snead conceded that he knew Doe since her childhood. Indeed, Snead confirmed his knowledge when he texted her "[w]e need another female but she has to be at least 18. Your birthday can't get here fast enough." This evidence clearly established that Snead knew that Doe had not yet reached the age of 18.

B.

Snead next contends that the district court erred by failing to sever Count I, on which he has been granted a new trial, from Counts III and IV before trial. Improper joinder is a defect in an indictment that "must be raised by pretrial motion if the basis for the motion is then reasonably available." Fed. R. Crim. P. 12(b)(3). Given that Snead failed to do this, we will consider his improper joinder argument only if he shows good cause for not making a timely motion. Fed. R. Crim. P. 12(c)(3). Snead "has not even attempted" to argue that good cause excuses his waiver. See United States v. King, 628 F.3d 693, 699 (4th Cir. 2011). Accordingly, we will not consider his claim.

6

C.

Snead argues that the district court erred in admitting evidence of "other crimes" for which he was not on trial, specifically his drug dealing.  Evidence of other crimes or wrongful acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Snead never challenged this evidence at trial.  When a defendant argues on appeal that bad acts evidence has been wrongfully admitted without first objecting at trial, we review only for plain error.  *United States v. Denton*, 944 F.3d 170, 185 (4th Cir. 2019).  To prevail under this standard, Snead must prove that there was an error, that was plain, that affected his substantial rights, and that seriously impacted "the fairness, integrity or public reputation of judicial proceedings."  *United States v. Olano*, 507 U.S. 725, 732 (1993).

Snead asserts that evidence of his drug dealing was not harmless because it "allowed the proceeding to become a case about Snead's character as a 'child exploiter' and 'drug dealer,' even though he was engaging in legal consensual relations."  Br. of the Appellant at 34.  The Government maintains that this evidence was "admissible as intrinsic evidence because it provided context for [Snead's] relationships with several key witnesses."  Br. of the United States at 36; *see United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010).  Intrinsic evidence "is essential to the story of the crime or provides context to the charged offense" and is not barred by Fed. R. Evid. 404(b)'s restrictions on admissibility.  *Denton*, 944 F.3d at 186 (internal citation omitted).

7

Portions of the evidence related to Snead's drug dealing, such as his non-consensual drugging of Doe while she slept, certainly appear intrinsic to the crimes charged. However, we need not determine whether this evidence was intrinsic to the crimes charged or was otherwise admissible under Rule 404(b)(2), because, as the Government also argues, its admission did not prejudice Snead or impact any of his substantial rights. To establish that plain error impacted his substantial rights, "the accused must demonstrate that 'the error actually affected the outcome of the proceedings,'" and that the jury's verdict was actually based upon the asserted error. *United States v. Williamson*, 706 F.3d 405, 412 (4th Cir. 2013) (quoting *United States v. Godwin*, 272 F.3d 659, 679–80 (4th Cir. 2001)). Snead has not established plain error, as the district court specifically instructed the jury that it could not consider his drug dealing for character or propensity purposes and the Government presented overwhelming evidence of his guilt on Counts III and IV without references to his status as a drug dealer.

D.

Snead also asserts that the district court erred in allowing expert testimony from Dr. Sharon Cooper about the culture and business of sex trafficking. We review the decision to admit or deny expert testimony for an abuse of discretion. *United States v. Shea*, 989 F.3d 271, 278 (4th Cir. 2021).

Snead moved *in limine* to exclude Dr. Cooper's testimony, and the district court denied Snead's motion, reasoning that the testimony would "help the jury to understand sex trafficking and the sexual exploitation of minors," which was "outside a jury's common experience." Snead contends that, in fact, Dr. Cooper's testimony "did not assist the jury

8

in understanding the evidence or in determining a fact in issue." Br. of the Appellant at 37. However, as we and several of our sister circuits have recognized, "the relationship between prostitutes and pimps is not the subject of common knowledge" and expert testimony can help a jury understand key elements of a sex-trafficking crime. *United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001); *see United States v. Brinson*, 772 F.3d 1314, 1319 (10th Cir. 2014); *United States v. Evans*, 272 F.3d 1069, 1094 (8th Cir. 2001); *United States v. Anderson*, 851 F.2d 384, 393 (D.C. Cir. 1988); *see also Jennings*, 860 F. App'x at 288-89; *United States v. Warren*, 774 F. App'x 778, 782 (4th Cir. 2019). The district court therefore did not abuse its discretion in admitting Dr. Cooper's testimony.

E.

Snead raises one final challenge to his conviction on Count III. He claims that the sex-trafficking statute under which he was prosecuted, 18 U.S.C. § 1591, is unconstitutionally vague and overbroad, both on its face and as applied to him. Because he did not raise these arguments at the trial court level, we review only for plain error. *United States v. Coston*, 964 F.3d 289, 294 (4th Cir. 2020).

Snead contends that the operative verbs in § 1591 — "recruits, entices, harbors, transports, provides" — are vague and lack standards for Government enforcement. A statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Contrary to his claim, each of the verbs at issue in § 1591 has an ordinary meaning that would provide a person of

9

ordinary intelligence fair notice of what conduct is prohibited. Thus, it is unsurprising that Snead has not pointed to a single case or other authority even suggesting that § 1591 is unconstitutionally vague.

Snead also maintains that § 1591 unconstitutionally inhibits his First Amendment associational rights and is therefore overbroad. To be found unconstitutional on this basis, "a statute's overbreadth [must] be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. As the Second Circuit has held, the legitimate sweep of § 1591 is that it "allows conviction of individuals . . . [who have] forced minors into prostitution and maintained them through varied means." *United States v. Thompson*, 896 F.3d 155, 167 (2d Cir. 2018). The jury here concluded that Snead committed such an offense, and thus his conduct falls squarely within the legitimate sweep of the statute. Both on its face and as applied to him the statute is not overbroad.

## III.

In addition to these arguments as to his convictions, Snead also challenges his sentence.

## A.

Snead maintains that the district court abused its discretion in ordering restitution. In requesting restitution, the Government must establish an appropriate amount by a preponderance of the evidence. *United States v. Steele*, 897 F.3d 606, 613 (4th Cir. 2018). Under the Trafficking Victims Protection Act, a victim may be compensated for losses including those involving "medical services relating to physical, psychiatric, or

10

psychological care [and] physical and occupation therapy or rehabilitation." 18 U.S.C. § 2259(c)(2)(A)-(B). Restitution may also include "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." 18 U.S.C. § 1593(b)(1), (3).

The district court ordered restitution of $199,243.35 in future medical and mental health expenses and $3,500 in lost earnings. Dr. Cooper examined Doe after the trial and made estimates as to the cost of future treatments for her medical conditions that were attributable to her sex trafficking. The district court "ordered restitution based on the low end of Dr. Cooper's cost estimates for some of [Doe]'s conditions, and only for a five-year period." Br. of the United States at 50. The lost earnings portion of the restitution amount — $3,500 — was also based on a conservative estimate that Doe was trafficked for only seven days and earned $500 per day. The overall amount of restitution ordered constituted a conservative estimate of Doe's lost wages and future expenses based on reliable estimates. The district court did not abuse its discretion in ordering this restitution.

### B.

Finally, Snead raises several objections to his sentence of 420 months imprisonment. We review a challenge to a sentence for both procedural and substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). When considering challenges to a district court's application of the Sentencing Guidelines, we "review questions of law de novo and findings of fact for clear error." *United States v. Hawley*, 919 F.3d 252, 255 (4th Cir. 2019).

11

Snead asserts that the district court committed procedural error in calculating his guidelines sentencing range. He argues that it was error to apply a two-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(2) for unduly influencing a minor to engage in prohibited sexual conduct. Snead contends that there was no evidence that he exerted influence over Doe. There is a rebuttable presumption that this enhancement applies when a defendant is at least ten years older than the minor, as is the case here. *Id.* § 2G1.3 cmt. n.3(B). Moreover, as noted by the Government, "there were numerous signs of undue influence beyond the 13-year age-gap." Br. of the United States at 55. These include the fact that Doe had no stable housing when Snead brought her into his "business," that he kept most of her earnings so she remained financially dependent on him, and that he slipped a drug, Molly, into her mouth while she was sleeping. The district court did not err in finding that Snead failed to rebut this presumption and applying the enhancement for undue influence.

Next, Snead claims that the district court erred in applying a two-level obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1. The court found by a preponderance of evidence that the false affidavits submitted on Snead's behalf and the call between Snead and his mother discussing the affidavits constituted an attempt to obstruct justice. The district court did not commit clear error in finding the two-level enhancement applicable in this case.

Snead also objects to the application of a five-level enhancement under U.S.S.G. § 4B1.5(b)(1) for engaging "in a pattern of activity involving prohibited sexual conduct." For this enhancement to apply, a defendant must have "engaged in a pattern of activity involving prohibited sexual conduct . . . on at least two separate occasions." U.S.S.G.

12

§ 4B1.5 cmt. N.4(B).  For purposes of this enhancement, "prohibited sexual conduct" includes violations of § 1591.  *See* 18 U.S.C. § 2426(b)(1)(A); U.S.S.G § 4B1.5 cmt. n.4(A).  The jury found that Snead violated § 1591, and record evidence established that this violation occurred over several weeks and trips to different cities.  Accordingly, the court did not err in finding that the multiple instances of trafficking, which constituted Snead's § 1591 violation, amounted to a pattern of activity and warranted application of this enhancement.

Lastly, Snead challenges his sentence as substantively unreasonable.  We apply a "presumption of reasonableness to a sentence within or below a properly calculated guidelines range."  *United States v. Vinson*, 852 F.3d 333, 357 (4th Cir. 2017).  That presumption may only be rebutted by proving the sentence unreasonable when weighed against the § 3553(a) factors.  *Id.* at 357-58; *see also* 18 U.S.C. § 3553(a).  After a thorough discussion of the § 3553(a) factors — detailing Snead's criminal history, the circumstances of these offenses, and his lack of remorse for committing these crimes — the district court varied down from the guidelines range in sentencing Snead to 420 months.  Snead has failed to rebut the reasonableness of the resulting sentence.

## IV.

For these reasons, we affirm the judgment of the district court.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

13