IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 2, 2020 Session

**METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY v. LAYTON JONES**

**Appeal from the Circuit Court for Davidson County
No. 19C462   Kelvin D. Jones, Judge**

_____

**No. M2020-00248-COA-R3-CV**

_____

A local government cited a property owner for operating his property as a short-term rental without a permit.  A general sessions court found the property owner violated the short-term rental ordinance and enjoined him from committing further violations.  The government later brought two criminal contempt actions against the property owner, claiming that he violated the court's injunction by continuing to run a short-term rental without a permit.  The first time, the property owner acknowledged his violations, and the general sessions court entered an agreed order.  The second time, the court found the property owner guilty of contempt after a hearing.  The property owner appealed that finding to the circuit court.  The circuit court found that the property owner was in contempt of the general sessions court's order on eighteen occasions.  Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

William Gary Blackburn and Bryant Beatty Kroll, Nashville, Tennessee, for the appellant, Layton Jones.

Robert E. Cooper, Metropolitan Director of Law; Jeff Campbell, Assistant Metropolitan Attorney; and Quantavius M. Poole, Assistant Metropolitan Attorney, for the appellee, Metropolitan Government of Nashville & Davidson Co.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Timothy Simonds, Senior Assistant Attorney General for the State of Tennessee.

# OPINION

## I.

In May 2017, the Metropolitan Government of Nashville and Davidson County cited Layton Jones under Metro's short-term rental property ("STRP") ordinance. Metro claimed that Mr. Jones violated the ordinance by advertising and renting his property for short-term rentals without a permit. The citation listed Metro Code § 17.16.250.E.1.a as the specific code section at issue. For the description of the offense, the citation provided "STRP Permit Required." And, tracking the relevant code language, it stated that "[n]o person . . . shall operate a STRP or advertise a residential property for use as a STRP without the owner of the property first having obtained a STRP permit." The citation compelled Mr. Jones to appear in general sessions court, specifically, the Davidson County Environmental Court, a division of Metro General Sessions Court.

Mr. Jones did not appear for his court date. So a referee of the environmental court entered a default order against Mr. Jones, finding him guilty of violating Metro Code § 17.16.250.E.1.a and fining him $50. The order also permanently enjoined Mr. Jones "from violations of Metropolitan Code of Laws § 17.16.250" at his property. And it made him ineligible for an STRP permit "for three years in accordance with Metropolitan Code of Laws § 17.16.250." Any violation of the order would subject Mr. Jones "to contempt proceedings and possible jail time."

Several months later, Metro filed a motion for contempt against Mr. Jones in the environmental court. The motion claimed that Mr. Jones "ha[d] continued to advertise and rent" his property "in violation of the [environmental court's] order." Mr. Jones "agree[d] that he willfully violated" the environmental court's order "and thus [wa]s in contempt of court." So, in December 2017, the court entered an agreed order finding that Mr. Jones "was in contempt for 15 days" and ordering him to pay a $750 fine, $50 per day of contempt.

In November 2018, Metro filed another motion for contempt against Mr. Jones in the environmental court. The motion again claimed that Mr. Jones "ha[d] continued to operate a [STRP] and advertise a [STRP]" at his property. After a hearing on the motion, a referee of the environmental court found Mr. Jones in contempt and sentenced him to two days in jail.

Mr. Jones requested a rehearing before a judge of the environmental court. After the rehearing, the judge found that Mr. Jones was in contempt for 401 days and sentenced him to three days in jail. The judge also assessed a $20,050 fine, $50 per day of contempt.

Mr. Jones then appealed to circuit court for a new trial. *See* Tenn. Code Ann. § 27-5-108(a)(1), (c) (Supp. 2020) (allowing a party to "appeal from a decision of the general

2

sessions court to the circuit court," where the appeal "shall be heard de novo"). After the trial, the circuit court found Mr. Jones guilty of eighteen counts of criminal contempt and sentenced him to 180 days in jail with all but four days suspended.

## II.

### A.

Mr. Jones raises eleven issues on appeal. Before challenging the sufficiency of the evidence to support his convictions, as well as his sentence, Mr. Jones raises various questions of law. Among those questions, he argues that the environmental court's enabling statute is unconstitutional. He also argues that the referee of the environmental court lacked authority to issue the injunction and to punish Mr. Jones for criminal contempt.

Mr. Jones did not make these arguments to the environmental court or the circuit court. "[M]atters not raised at the trial level are considered waived." *Eagles Landing Dev., LLC v. Eagles Landing Apartments, LP*, 386 S.W.3d 246, 254 (Tenn. Ct. App. 2012). This general rule "applies to an attempt to make a constitutional attack upon the validity of a statute for the first time on appeal."[1] *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983); *see Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 457 (Tenn. 1995) (reasoning that "issues of constitutionality should not first surface on appeal"); *City of Elizabethton v. Carter Cty.*, 321 S.W.2d 822, 827 (Tenn. 1958) ("We do not have any sympathy for the practice of raising constitutional questions for the first time on appeal . . . ."). And "[a]n objection to a judge's competence cannot be made for the first time on appeal" either. *Dupuis v. Hand*, 814 S.W.2d 340, 342 (Tenn. 1991).

Nevertheless, Mr. Jones argues that he did not waive these issues because subject matter jurisdiction cannot be waived. *See In re Baby*, 447 S.W.3d 807, 837 (Tenn. 2014) ("Issues related to subject matter jurisdiction . . . are not subject to waiver."). But neither issue implicates subject matter jurisdiction. So we conclude that Mr. Jones waived his arguments to the constitutionality of the environmental court's enabling statute and to the referee's authority.

The constitutionality of a statute implicates subject matter jurisdiction only if the statute grants jurisdiction. *See McCarver v. Ins. Co. of Pa.*, 208 S.W.3d 380, 383 (Tenn. 2006) (not deeming a constitutional argument waived because the statute "grant[ed] jurisdiction to the General Sessions Court"). The enabling statute did not grant jurisdiction

---

[1] An exception to the general rule is when a statute "is so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Lawrence*, 655 S.W.2d at 929. That exception does not apply here.

3

to the environmental court. The Metro charter did. *See Metro. Gov't of Nashville & Davidson Cty. v. Ollis*, No. M2010-02046-COA-R3-CV, 2011 WL 2991616, at *2 (Tenn. Ct. App. July 22, 2011); *see also* Tenn. Code Ann. § 7-3-311(f) (2015) (permitting a metropolitan government's charter to vest "jurisdiction to hear, try and dispose of all cases arising under the . . . ordinances . . . of the metropolitan government" in a general sessions court). The charter provides that the Metro General Sessions Court, of which the environmental court is a division, "shall have exclusive jurisdiction to hear, try and dispose of cases involving the breach of any and all ordinances . . . of [Metro]." METRO. GOV'T OF NASHVILLE & DAVIDSON CTY. CHARTER § 14.02. The enabling statute then allows the environmental court to "order any defendant found guilty of violating [certain] metropolitan ordinance[s] . . . to correct such violation at the defendant's own expense." 1993 Tenn. Pub. Acts 316. So the enabling statute only designates the environmental court to hear specific types of cases that all general sessions courts already had jurisdiction to hear.[2] Because the enabling statute did not grant jurisdiction to the environmental court, its constitutionality does not implicate subject matter jurisdiction.

The referee's authority also does not implicate subject matter jurisdiction. Tennessee courts have not found that the authority of judicial officers is an issue of subject matter jurisdiction. *See Tenn. Dep't of Children's Servs. v. A.M.H.*, 198 S.W.3d 757, 762, 764 (Tenn. Ct. App. 2006) (holding that a challenge to the authority of a special judge was waived despite the party's argument that the issue "[went] to . . . jurisdiction"). It is "well settled . . . that a party may waive the incompetency or lack of authority to act of the trial judge." *Winters v. Allen*, 62 S.W.2d 51, 52 (Tenn. 1933); *see Wroe v. Greer*, 32 Tenn. (2 Swan) 172, 173 (1852) ("The objection for incompetency of the justice should have been taken before him, and before a trial upon the merits; if not so taken, the objection is to be considered as waived.").

B.

As for his other questions of law, Mr. Jones argues that the environmental court lacked jurisdiction and that its injunction was improper. His arguments about the injunction involve the interpretation of statutes and of the environmental court's order itself. Mr. Jones further claims that he was given insufficient notice of the contempt charges in both the environmental and circuit courts. We review these questions of law de novo. *See Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015) (subject matter and personal jurisdiction); *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010) (interpretation of statutes); *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 356

---

[2] The enabling statute also allows the environmental court to "issue injunctions." 1993 Tenn. Pub. Acts 316. And if the defendant "willfully fails to obey" the injunction, the court may punish the defendant for contempt. *Id.* We note general sessions courts, like the environmental court, already possess these powers by virtue of other statutes. *See* Tenn. Code Ann. § 16-15-713(a) (2009) (contempt power); *id.* § 16-15-401(b) (2009) (injunctive power).

4

(Tenn. 2008) (interpretation of court orders); *Sprague v. Sprague*, No. E2012-01133-COA-R3-CV, 2013 WL 3148278, at *3 (Tenn. Ct. App. June 18, 2013) (sufficiency of criminal contempt notices).

1. The Environmental Court's Jurisdiction

Mr. Jones argues that the environmental court lacked subject matter jurisdiction to entertain Metro's contempt motions. And if the environmental court lacked subject matter jurisdiction, the circuit court did too. *See Riden v. Snider*, 832 S.W.2d 341, 342 (Tenn. Ct. App. 1991) (explaining that, on de novo appeal, a circuit court can "only exercise such subject matter jurisdiction as the general sessions court had"). But courts have the inherent power to punish contempt of their own orders. *See* Tenn. Code Ann. § 29-9-102(3) (2012) ("The power of the several courts" to punish contempt includes punishing "willful disobedience" of a lawful order); *Baker v. State*, 417 S.W.3d 428, 435 (Tenn. 2013) (recognizing the "inherent power of courts" to punish contempt). Still, Mr. Jones claims that the environmental court lost that inherent power ten days after entry of the default order. And Metro did not bring the relevant contempt charges until over a year later.

Mr. Jones's argument is not persuasive. The ten-day period after a general sessions court enters an order is only relevant to the timeliness of an appeal to circuit court. *See Love v. Coll. Level Assessment Servs., Inc.*, 928 S.W.2d 36, 38 (Tenn. 1996) (holding that a circuit court "has no jurisdiction over the [general sessions] case" if no appeal is filed within ten days of entry of the general sessions court's judgment). It is not relevant to the continuing jurisdiction of general sessions courts, which "have the power to . . . inflict punishments for contempts of court." Tenn. Code Ann. § 16-15-713(a) (2009). If general sessions courts could not inflict punishments for contempts after ten days, they could not properly "'preserve the power and vindicate the dignity and authority of the law.'" *See Baker*, 417 S.W.3d at 436 (quoting *State v. Beeler*, 387 S.W.3d 511, 520 (Tenn. 2012)). Because the environmental court had subject matter jurisdiction over the contempt proceedings, the circuit court had subject matter jurisdiction over them on de novo appeal.

Mr. Jones also argues that the environmental court lacked personal jurisdiction over him because Metro improperly served him with the citation. *See Ramsay v. Custer*, 387 S.W.3d 566, 568 (Tenn. Ct. App. 2012) (reasoning that personal jurisdiction "is acquired by service of process"). So, he claims, the environmental court's order—on which the contempt charges were based—is void. *See id.* at 569 (explaining that a default judgment "based on void service is a void judgment"). But, even if service of the citation was improper, a defendant can waive a court's lack of personal jurisdiction. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). One method of waiver is by failing to object to a general sessions court's jurisdiction before the hearing. *See* Tenn. Code Ann. § 16-15-505 (2009) ("Objections to the jurisdiction of the general sessions court . . . shall be made before the hearing, or they will be considered as waived."). Another "is by making a voluntary 'general appearance' before the court." *Landers*, 872 S.W.2d at 675. "[A]

5

party's consent to the entry of a judgment against it constitutes a general appearance." *Dixie Sav. Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988). An appearance that "contest[s] the merits of the plaintiff's filing without raising the jurisdictional defense" does too. *P.E.K. v. J.M.*, 52 S.W.3d 653, 660 (Tenn. Ct. App. 2001).

Here, Mr. Jones did not object to the environmental court's jurisdiction before any of the hearings in that court. He also entered an agreed order of contempt in response to Metro's first contempt motion. And, in response to Metro's second contempt motion, Mr. Jones filed a motion seeking to dismiss the charges. Both responses were general appearances before the environmental court. Mr. Jones waived any objection to the environmental court's personal jurisdiction.

## 2. The Environmental Court's Injunction

Mr. Jones argues that Tennessee statutes only give the environmental court power to issue injunctions that abate nuisances. And the injunction here was not issued to abate a nuisance. He also argues that the injunction was a disfavored "obey-the-law" injunction. So, he claims, it could not form the basis for the contempt charges.

### a. Injunctive Powers

For his first argument, Mr. Jones relies on a statute that confers jurisdiction "to abate public nuisances" on "any court designated as an environmental court." Tenn. Code Ann. § 29-3-102 (Supp. 2020). But another statute grants general injunctive power to general sessions courts, including the environmental court. *See id.* § 16-15-401(b) (General sessions court judges "have the same authority as circuit court judges or chancellors to grant . . . injunction[s].").

We conclude the environmental court had the power to enter the injunction. When construing statutes, "[w]e avoid constructions that place one statute in conflict with another." *State v. Frazier*, 558 S.W.3d 145, 153 (Tenn. 2018). Instead, "we must endeavor to resolve any possible conflict between statutes in favor of each other in order to provide a harmonious operation of laws." *Lovlace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013). To interpret a statute that grants a specific power as a limitation on the general powers granted by another statute would create an avoidable conflict. So we decline to read the statute on which Mr. Jones relies as limiting the general injunctive power granted to general sessions courts.[3]

---

[3] "[A] more specific statutory provision takes precedence over a more general provision" only when the statutes conflict. *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010). There is no conflict here.

b. Vagueness and Overbreadth

Whether the environmental court's injunction was an impermissible "obey-the-law" injunction is a closer question. Such injunctions simply "command . . . the defendant [to] obey the law." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) (citation omitted). The principal concerns with obey-the-law injunctions are vagueness and overbreadth. *See N.L.R.B. v. Exp. Publ'g Co.*, 312 U.S. 426, 433 (1941); *Swift & Co. v. United States*, 196 U.S. 375, 396 (1905); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841-42 (7th Cir. 2013); *see also Hogue v. Hogue*, 147 S.W.3d 245, 249 (Tenn. Ct. App. 2004) (recognizing "concern[s] with vague and overly broad injunctions"). These concerns "are rooted in basic principles of due process." *AutoZone, Inc.*, 707 F.3d at 842.

A vague injunction does not "inform[], as accurately as the case permits, what [the enjoined parties] are forbidden to do." *Swift & Co.*, 196 U.S. at 401. An overbroad injunction increases "the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful." *E.g.*, *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004) (citing *Exp. Publ'g Co.*, 312 U.S. at 435-36). Courts should limit the scope of an injunction to conduct that "'is related to the proven unlawful conduct'" in the case. *Howe v. City of Akron*, 801 F.3d 718, 753 (6th Cir. 2015) (quoting *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994)); *see Kersey v. Wilson*, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *8 (Tenn. Ct. App. Dec. 29, 2006) (reasoning that an injunction should be no "broader than necessary to achieve its purposes").

Here, the default order "permanently enjoin[ed]" Mr. Jones "from violations of Metropolitan Code of Laws § 17.16.250" at the subject property. Some courts have reasoned that injunctions that track statutory language can be too vague. *See S.E.C. v. Goble*, 682 F.3d 934, 952 (11th Cir. 2012) ("[I]n some instances an injunction which merely tracks the language of . . . statutes and regulations will not clearly and specifically describe permissible and impermissible conduct."); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009) (recognizing that an injunction that "tracks statutory language" can be "too vague" if it does not "relate[] the enjoined violations to the context of the case"); *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 898 (5th Cir. 1978) (vacating provision of injunction that was only slightly "more specific than Title VII itself"). The default order "merely cross-reference[d] the relevant" code section. *See Goble*, 682 F.3d at 952. Also, by its terms, the injunction outlawed violations of the entirety of Metro Code § 17.16.250. That code section prohibits more than operating an STRP without a permit. But operating an STRP without a permit was the only unlawful conduct at issue here.

Although the injunction against Mr. Jones appears vague and overbroad, the circumstances show otherwise. An enjoined party need only have "'fair notice of what conduct will risk contempt.'" *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir.

1996) (quoting *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994)). And the "fair notice requirement" must be applied in light of the surrounding circumstances. *See Philip Morris*, 566 F.3d at 1137. If the enjoined party understands his obligations under the injunction, then the injunction is not vague. *Goble*, 682 F.3d at 952; *see Hogue*, 147 S.W.3d at 250 (noting that "parties subject to an injunction [should be] properly apprised of their obligations"). And we must read court orders "'in the light of the pleadings and the other parts of the record.'" *Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 786 (Tenn. Ct. App. 2009) (quoting *John Barb, Inc. v. Underwriters at Lloyds of London*, 653 S.W.2d 422, 423 (Tenn. Ct. App. 1983)).

After entry of the injunction against Mr. Jones, Metro put a notice on his door saying he needed a permit. Mr. Jones testified in the circuit court trial that, at that point, he understood he needed a permit. Yet he kept operating his property as an STRP without one anyway. When Metro brought the first contempt action against him, Mr. Jones consented to the agreed order of contempt, an implicit acknowledgement that the injunction prohibited him from operating his property as an STRP without a permit. And he never claimed otherwise. *See United States v. Miller*, 588 F.2d 1256, 1261 (9th Cir. 1978) (upholding injunction where "the circumstances . . . show[ed] that [the defendant] understood its meaning" and "never sought a modification or clarification of its language"); *Jake's, Ltd. v. City of Coates*, 356 F.3d 896, 900 (8th Cir. 2004) (upholding finding of contempt because contemner "previously conceded" that conduct at issue fell within injunction's scope). Under the circumstances, Mr. Jones was "properly apprised of [his] obligations." *See Hogue*, 147 S.W.3d at 250. So the injunction is not vague.

The circumstances also show that the injunction is not overbroad. The citation made clear that the only violations at issue were operating an STRP without a permit. Although the language of the injunction seems to prohibit violations of the entirety of Metro Code § 17.16.250, the injunction made Mr. Jones's property ineligible for an STRP permit for three years. Ineligibility for an STRP permit is only relevant to STRP violations—not the whole of § 17.16.250. And for a property that never had an STRP permit, the only possible STRP violation is continued operation without a permit. So the ineligibility period clarified that the injunction only sought to prohibit further operation of the property as an STRP without a permit. *See In re Rodriguez*, 695 F.3d 360, 369 (5th Cir. 2012) (explaining that the order itself can clarify what exactly it prohibits); *Branch v. Branch*, 249 S.W.2d 581, 583 (Tenn. Ct. App. 1952) (reasoning that a judgment's intent should be "gathered from all parts of the judgment"). That conduct was then the basis for all of Metro's later contempt allegations. So, in light of the record, the injunction is properly read to only prohibit operating an STRP without a permit. *See Lamar Advert. Co.*, 313 S.W.3d at 786. And because that conduct was the conduct for which the environmental court found Mr. Jones guilty, the injunction is not overbroad. *See Howe*, 801 F.3d at 753.

Under these circumstances, we conclude that the injunction was not an impermissible "obey-the-law" injunction. Mr. Jones understood it to prohibit him from

8

operating the property as an STRP without a permit.  And that is all the injunction was intended to prohibit.  There was never a "likelihood of unwarranted contempt proceedings" based on other conduct.[4]  *See Int'l Rectifier Corp.*, 383 F.3d at 1316.

3. Notice

Mr. Jones argues that he received inadequate notice of the contempt charges in both the environmental and circuit courts.  Appeals to circuit court from general sessions court "provide[] the parties an entirely new trial as if no other trial had occurred and as if the case had originated in the circuit court."  *Ware v. Meharry Med. Coll.*, 898 S.W.2d 181, 184 (Tenn. 1995).  A party can amend "the form of [its] action" and "the statement of [its] cause of action."  Tenn. Code Ann. § 16-15-729 (2009).  And the circuit court must disregard "any informality whatever" that may have occurred in the general sessions court.  *See id.*  So only the notice in the circuit court is relevant to our review.

Parties facing criminal contempt charges must "be given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge."  *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006).  A criminal contempt notice must "(A) state the time and place of the hearing; (B) allow the alleged contemner a reasonable time to prepare a defense; and (C) state the essential facts constituting the criminal contempt charged and describe it as such."  Tenn. R. Crim. P. 42(b)(1).  Essential facts are those which

> (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment—not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous.

*McClain v. McClain*, 539 S.W.3d 170, 219 (Tenn. Ct. App. 2017) (citation omitted).  These requirements are minimal.  *See Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996).

Here, a Case Management and Scheduling Order, filed on September 17, 2019, set the hearing in circuit court for January 13, 2020.  Metro filed an Amended Motion for Contempt Hearing (the "Motion") less than a month later, specifying the time for the hearing on that date.  The hearing later took place on February 11, 2020.  So Mr. Jones had notice of the time and place of the hearing, and he had a reasonable time to prepare a

---

[4] Although Mr. Jones also argues that the injunction did not comply with the Tennessee Rules of Civil Procedure, he did not make this argument to the environmental or circuit courts.  So he has waived it. *See Schneider v. City of Jackson*, 226 S.W.3d 332, 342 n.12 (Tenn. 2007).

9

defense. Metro also filed a Notice of Hearing and Defendant's Rights (the "Notice") on October 11, 2019, a week after the Motion. The Motion and the Notice expressly charged Mr. Jones with criminal contempt and referenced the Tennessee Rules of Criminal Procedure. The Notice also listed constitutional rights provided to defendants in criminal cases. So Mr. Jones could glean that he was charged with a crime. The Motion differentiated between civil and criminal contempt, and it specifically "move[d] the Court for a criminal contempt finding." So Mr. Jones should have understood that Metro sought to punish him, not to secure his compliance with a prior order.

Lastly, both the Motion and the Notice specifically accused Mr. Jones of advertising and renting the property as an STRP in violation of the environmental court's order. That order is clear and unambiguous. In determining the specificity of a court order, courts "take[] into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed." *Konvalinka*, 249 S.W.3d at 356. Here, Metro earlier accused Mr. Jones of continuing to advertise and rent the property as an STRP. Mr. Jones agreed that he had done so in violation of the order. He knew the order prohibited him from operating the property as an STRP and never claimed otherwise. *See Dukes v. Dukes*, No. M2014-00847-COA-R3-CV, 2015 WL 9946275, at *3 (Tenn. Ct. App. Aug. 13, 2015) (concluding that court order was not ambiguous because enjoined party, who admitted his obligation under the order, "understood what the order required of him" and did not "seek clarification or modification of the [order]"). Mr. Jones could determine the nature of Metro's accusations. He had sufficient notice under Tennessee Rule of Criminal Procedure 42(b).

C.

Mr. Jones also argues that the evidence was insufficient to support his convictions and that his sentence is excessive. And he claims that his rights under the Confrontation Clause were violated during the circuit court trial.

1. Mr. Jones's Convictions

a. Confrontation Clause

We address the Confrontation Clause issue first. Whether there has been a violation of the Confrontation Clause is a question of law, which we review de novo. *See State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007).

During the circuit court trial, Metro offered a report from Host Compliance, LLC into evidence under the business-records exception to the hearsay rule. *See* Tenn. R. Evid. 803(6) (allowing a "memorandum, report, record, or data compilation" to be offered as evidence provided that certain foundational facts are established). The report tracked reviews left on online listings of Mr. Jones's property to determine how many rentals had

10

occurred. Metro laid the foundation for the report with a certificate from Host Compliance's records custodian under Tennessee Rule of Evidence 902(11). *See id.* (permitting the foundation for a business record to be laid with "a certification that complies with Rule 902(11)"); Tenn. R. Evid. 902(11) (stating that a business record is self-authenticating if its custodian or "[an]other qualified person" certifies the necessary foundational facts by affidavit). Mr. Jones argues that laying the foundation for the report in this way violated his rights under the Confrontation Clause to the United States and Tennessee Constitutions. Metro conceded at oral argument that the clause applies to criminal contempt proceedings. So we assume, without deciding, that it does.

Both the United States and Tennessee Constitutions protect a criminal defendant's right "to be confronted with the witnesses against him." U.S. CONST. amend. VI;[5] *see* TENN. CONST. art. I, § 9 (protecting a criminal defendant's right "to meet the witnesses face to face"). The same standards govern the analysis under both constitutions. *State v. Hutchison*, 482 S.W.3d 893, 905 (Tenn. 2016). So we analyze Mr. Jones's federal and state constitutional claims together. *State v. Dotson*, 450 S.W.3d 1, 62 (Tenn. 2014).

The Confrontation Clause bars admission of "statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). But only "those who 'bear testimony'" are witnesses. *Id.* at 51 (citation omitted). So the clause only prevents the admission of statements that are also "testimonial." *Id.* at 53-54. Whether a statement is testimonial is "the threshold question" in Confrontation Clause cases. *Dotson*, 450 S.W.3d at 63 (citing *State v. Cannon*, 254 S.W.3d 287, 301 (Tenn. 2008)).

Testimony is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (citation omitted). So "'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits,'" are among the "core class" of testimonial statements. *Id.* at 51-52 (ellipsis in original) (quoting *White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., concurring in part and concurring in the judgment)). But the focus is ultimately on the "primary purpose" of the statement. *See, e.g.*, *Davis v. Washington*, 547 U.S. 813, 822 (2006). A statement is testimonial if its "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822. In other words, if a statement is "procured with a primary purpose of creating an out-of-court substitute for trial testimony," it is testimonial. *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

Under these principles, the United States Supreme Court has held that "certificates of analysis," which verified a substance as cocaine in a drug case, were testimonial.

---

[5] The Sixth Amendment right to confrontation applies to the States under the Due Process Clause of the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403 (1965).

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308, 311 (2009). The certificates were "quite plainly affidavits." *Id.* at 310. And their purpose was to provide "prima facie evidence of the composition, quality, and the net weight" of the substance analyzed. *Id.* at 311 (citation omitted). So, "incontrovertibly," the certificates were "'solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact.'" *Id.* at 310 (quoting *Crawford*, 541 U.S. at 51). The Court has also held that a certificate verifying the results of a blood-alcohol test in a DWI case was testimonial. *Bullcoming v. New Mexico*, 564 U.S. 647, 652-53, 663 (2011) (plurality opinion). As in *Melendez-Diaz*, the certificate was "created solely for an 'evidentiary purpose'"—to prove that the defendant's blood-alcohol level was "inordinately high." *See id.* at 653, 664 (quoting *Melendez-Diaz*, 557 U.S. at 311). And a plurality reasoned that "the formalities attending" the certification "[were] more than enough to qualify [the certificate] as testimonial." *Id.* at 665.

Since these cases, three variations on the proper standard for whether a statement is testimonial have emerged. *See generally Williams v. Illinois*, 567 U.S. 50 (2012); *see also Hutchison*, 482 S.W.3d at 908-09. The first variation still focuses on "whether a statement was made for the primary purpose of establishing 'past events potentially relevant to later criminal prosecution.'" *Williams*, 567 U.S. at 135 (Kagan, J., dissenting) (quoting *Davis*, 547 U.S. at 822). This is the "basic evidentiary purpose test." *Young v. United States*, 63 A.3d 1033, 1043 (D.C. Cir. 2013). The second variation has "refined" the test "to focus on whether the . . . statement had 'the primary purpose of accusing a targeted individual.'" *Hutchison*, 482 S.W.3d at 908 (quoting *Williams*, 567 U.S. at 84 (plurality opinion)). This refinement added a "targeted accusation requirement." *Young*, 63 A.3d at 1044. The third variation, like the first, "agree[s] with the past formulation of the primary purpose test." *Hutchison*, 482 S.W.3d at 909. But it requires that a statement also bear "indicia of solemnity" to be testimonial. *Williams*, 567 U.S. at 110-11 (Thomas, J., concurring in the judgment). So the third standard "employ[s]" a "formality criterion." *Young*, 63 A.3d at 1043. Our supreme court has adopted a framework that finds a statement testimonial "'when [the statement] passes the basic evidentiary purpose test plus either the . . . targeted accusation requirement or [the] formality criterion.'" *Dotson*, 450 S.W.3d at 69 (quoting *Young*, 63 A.3d at 1043-44); *see Hutchison*, 482 S.W.3d at 910. We will apply that framework.

The Rule 902(11) certificate here is an affidavit. So Metro laid the foundation for the Host Compliance report with extrajudicial statements "contained in formalized testimonial materials." *See Crawford*, 541 U.S. at 52. Such statements are generally among the "core class" of testimonial statements. *Id.* at 51; *see also Bullcoming*, 564 U.S. at 665 (plurality opinion); *Melendez-Diaz*, 557 U.S. at 310. Still, along with other jurisdictions, we conclude that the Rule 902(11) certificate was not testimonial. *See United States v. Clotaire*, 963 F.3d 1288, 1296 (11th Cir. 2020); *United States v. Johnson*, 688 F.3d 494, 504-05 (8th Cir. 2012); *United States v. Yeley-Davis*, 632 F.3d 673, 680 (10th Cir. 2011); *United States v. Adefehinti*, 510 F.3d 319, 328 (D.C. Cir. 2007); *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007); *United States v. Ellis*, 460 F.3d 920, 927

(7th Cir. 2006); *State v. Cruz*, 349 P.3d 401, 405 (Haw. Ct. App. 2015); *State v. Brooks*, 56 A.3d 1245, 1256 (N.H. 2012); *State v. Doss*, 754 N.W.2d 150, 165 (Wis. 2008).

The Rule 902(11) certificate here did not have a primary purpose of being evidentiary. In *Melendez-Diaz*, the certificates verified "the composition, quality, and the net weight" of what proved to be cocaine, which supported the defendant's convictions for distributing and trafficking in cocaine. 557 U.S. at 308-09. And in *Bullcoming*, the certificate verified the defendant's blood-alcohol level, which was high enough to "support[] a prosecution for aggravated DWI." 564 U.S. at 655 (plurality opinion). In both cases, the certificates were "substantive evidence" of guilt. *See Williams*, 567 U.S. at 66 (plurality opinion) (describing the certificate in *Bullcoming* as "substantive evidence against the defendant"); *Melendez-Diaz*, 557 U.S. at 323 (describing the certificates at issue in the same way); *see also Doss*, 754 N.W.2d at 164 (reasoning that a certificate is testimonial if it "suppl[ies] substantive evidence of guilt"). The certificates themselves provided evidence of facts critical to the defendants' convictions. *See Williams*, 567 U.S. at 65 (plurality opinion) (emphasizing that "prov[ing] the nature of the substance found in the defendant's possession" in *Melendez-Diaz* was a "critical fact"); *see also Commonwealth v. Parenteau*, 948 N.E.2d 883, 890 (Mass. 2011) (reasoning that the certificate at issue was testimonial because it proved "an essential element of the charged crime").

By contrast, Rule 902(11) certificates are "for foundational purposes only." *See Doss*, 754 N.W.2d at 165; *see also Yeley-Davis*, 632 F.3d at 680 (describing Rule 902(11) certificates as "foundational documents"); *Ellis*, 460 F.3d at 927 (describing Rule 902(11) certificates as "foundational evidence"). Metro used the certificate here only for such a purpose—to lay a foundation for the Host Compliance report as a business record. Laying that foundation allowed the report to be considered as substantive evidence. *See Waller v. State*, No. M2005-02056-COA-R3-CV, 2006 WL 2956515, at *5 (Tenn. Ct. App. Oct. 16, 2006) (requiring "a proper foundation" to be laid before a business record "may come in as substantive evidence"). The certificate itself, unlike those in *Melendez-Diaz* and *Bullcoming*, was not the substantive evidence. *See Brooks*, 56 A.3d at 1255 (reasoning that the certificates at issue "served only as the foundation for the admission of the substantive evidence"). The certificate here did not itself provide evidence of facts essential to Mr. Jones's conviction.

Because the Rule 902(11) certificate did not "establish[] or prov[e] some fact," it fails the basic evidentiary purpose test. *See Crawford*, 541 U.S. at 51 (citation omitted). Thus, we need not consider the targeted accusation requirement or the formality criterion. *See Hutchison*, 482 S.W.3d at 910 (reasoning that the basic evidentiary purpose test is the "threshold standard"). The certificate was not testimonial. So Mr. Jones's rights under the Confrontation Clause were not violated. Having resolved this issue against Mr. Jones, we consider his convictions.

b. Sufficiency of the Evidence

When reviewing criminal contempt convictions, "we employ the four-element analysis set forth in" *Konvalinka v. Chattanooga-Hamilton County Hospital Authority*, 249 S.W.3d 346 (Tenn. 2008). *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011). Beyond the claimed Confrontation Clause violation, Mr. Jones's arguments focus on the third element of the *Konvalinka* analysis—whether he "actually violated" the environmental court's order. *See Konvalinka*, 249 S.W.3d at 356. This is a factual issue. *Id.* We only reverse a criminal contempt finding "if the evidence is insufficient to support the finding . . . of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e); *Furlong*, 370 S.W.3d at 336.

A finding of guilt "destroys the presumption of innocence and imposes a presumption of guilt." *State v. Wilson*, 211 S.W.3d 714, 718 (Tenn. 2007). So the accused "bear[s] the burden of overcoming th[at] presumption of guilt on appeal." *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the government. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994). We do not "re-weigh or re-evaluate the evidence." *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). "[Q]uestions concerning the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence" belong to the trier of fact. *Wilson*, 211 S.W.3d at 718. The finding of guilt "resolves all conflicts in favor of the [government's] theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

When taken in the light most favorable to Metro, the evidence was sufficient to support the circuit court's contempt findings. Metro called Robert Osborne, an employee of the Metro Codes Department who enforces the STRP ordinance, as a witness. After the agreed order of contempt in December 2017, Mr. Osborne saw Mr. Jones advertise his property again in 2018. One advertisement, a June 2018 Facebook post from Mr. Jones's account, asked if anyone was "looking for houses to rent this weekend in Nashville[.]" Mr. Osborne also saw a listing of the property for rent online in September 2018. And he later accessed a different online listing and was able to book a stay. The listings had photographs of the property that matched Mr. Osborne's recollection of the property from earlier site visits. As shown by this testimony, as well as the Host Compliance report, there were multiple listings associated with the property.

Mr. Jones argues that the listings could have been for another property for which he had a rental permit. But Host Compliance's software tracked each listing associated with a specific property, including the property for which Mr. Jones was issued a citation. When a renter posts a review on a listing, the software records it as a "documented stay." The report showed nine documented stays at Mr. Jones's property in 2018. Those stays were made possible by at least ten listings. And the circuit court found that Mr. Jones advertised and rented the property nine times each.

14

In his testimony, Mr. Jones insisted that he did not operate the property as an STRP after the December 2017 agreed order of contempt. Mr. Jones leased his property in November 2017 and claimed his tenant was responsible for any advertisements and rentals since then. But other evidence supported the circuit court's finding that Mr. Jones was still responsible for them.

Mr. Jones also argues that the Host Compliance report was incomplete and unreliable. But, at trial, Mr. Osborne addressed Mr. Jones's concerns about the report. And he explained how the report could still accurately reflect that nine short-term rentals did, in fact, happen in 2018. The court gave weight to this testimony and to the report in finding Mr. Jones guilty of eighteen counts of contempt. We will not reweigh the evidence or disturb the court's implicit decision to credit the testimony of Mr. Osborne over that of Mr. Jones. *See Evans*, 108 S.W.3d at 236.

2. Mr. Jones's Sentence

As for Mr. Jones's sentence, we typically review a court's sentencing decision only for an abuse of discretion. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). And we grant "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* But, here, the circuit court did not provide reasoning for its sentence. So our review is de novo. *See id.* at 705 ("[I]f trial courts fail altogether to place on the record any reason for a particular sentence, the appellate courts would be forced to conduct a de novo review."). And we may "modify a sentence that [we] consider[] to be excessive." *Trezevant v. Trezevant*, 568 S.W.3d 595, 640 (Tenn. Ct. App. 2018) (citing *Thigpen*, 874 S.W.2d at 54).

A court may punish contempt by imprisonment "not exceeding ten (10) days." Tenn. Code Ann. § 29-9-103 (2012). Our courts "have upheld th[is] maximum ten-day sentence" for a "single instance of criminal contempt." *In re Sneed*, 302 S.W.3d 825, 828 (Tenn. 2010) (citing *Frye v. Frye*, 80 S.W.3d 15, 17, 19 (Tenn. Ct. App. 2002); *State v. Ramos*, No. M2007-01766-CCA-R3-CD, 2009 WL 890877, at *8 (Tenn. Crim. App. Apr. 2, 2009)). When a defendant is sentenced for multiple instances of criminal contempt, the court "must determine whether the sentences run consecutively or concurrently to one another." *Id.* (citing Tenn. Code Ann. § 40-35-115(a) (2019)). A defendant who has been convicted of multiple instances of criminal contempt "automatically qualifies for consecutive sentencing as to all counts." *Id.* at 829; *see* Tenn. Code Ann. § 40-35-115(b)(7) ("The court may order sentences to run consecutively if . . . [t]he defendant is sentenced for criminal contempt.").

Here, the circuit court sentenced Mr. Jones to the maximum ten-day sentence for each of eighteen instances of contempt, for a total of 180 days. And the court imposed consecutive sentencing for all instances.

We do not consider this sentence excessive, as Mr. Jones contends. Not only did he qualify for maximum, consecutive sentences, but the court required him to serve only four days of the total sentence. The court stayed the remainder of the sentence. Mr. Jones only risks imposition of the balance of the sentence if he fails to comply with the court's order of contempt.

Mr. Jones argues that the circuit court did not hold a sentencing hearing. But we agree with Metro that one was not necessary for "meaningful review of the sentence." *See Trezevant*, 568 S.W.3d at 641. When a trial court's order lacks specificity as to how the court determined the sentence, the "history of [the defendant's] activity in th[e] case" can still provide "a sufficient basis" for the sentence. *See id.* at 641. The history of Mr. Jones's conduct here—namely, eighteen contemptuous acts—provides a sufficient basis to uphold his sentence. And we find that the sentence comports with the principles of the Sentencing Act. Imposing maximum sentences to be served consecutively accounts for the seriousness of disobeying a court order eighteen times. *See* Tenn. Code Ann. § 40-35-103(1)(B) (2019). And suspending all but four days of the total sentence provides for less severe means of punishment and recognizes that the sentence "should be no greater than that deserved." *See id.* §§ 40-35-103(2), (4)-(5). Based on our de novo review, we conclude that Mr. Jones's sentence is appropriate and not excessive.[6]

## III.

The evidence was sufficient to support the circuit court's contempt findings against Mr. Jones. And we do not consider Mr. Jones's sentence excessive under the circumstances. The other issues raised by Mr. Jones have been waived or are unavailing. So we affirm.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

---

[6] Mr. Jones raises two other issues related to his punishment. He argues that both the environmental and circuit courts erred by not "immediately allow[ing] bail" pending appeal. But only a "timely setting of bail upon a criminal contempt conviction" is necessary. *Weissfeld v. Weissfeld*, No. E2004-00134-COA-R3-CV, 2004 WL 2070979, at *5 (Tenn. Ct. App. Sept. 16, 2004). Both courts set bail in a timely manner. The environmental court set bail on the same day it found Mr. Jones in contempt. And the circuit court set bail the day after it found Mr. Jones in contempt. Mr. Jones also argues that it is unconstitutional to require a cash bond. But we agree with Metro that neither court required a cash bond.